ERNEST L. BEALL v. THE TOWNSHIP OF ATHENS.

*Municipal corporations—Defective highways—Proximate cause of
injury.*

1. A township is only liable, under Act No. 264, Laws of 1887, for
   injuries sustained by reason of its neglect to keep its highways
   in repair, where such neglect is the *proximate* cause of the
   injury.

   So *held*, where the person injured was driving along a por-
   tion of a highway which had been raised above the level of
   the ground by an embankment from nine to fourteen feet
   wide on the top, along which no barriers had been erected.
   The horse became frightened at a log lying outside of the

wrought portion of the highway, and, on being struck by the driver, sprang forward, and upset the buggy, causing the injury complained of. And it is held that the *primary* cause of the accident arose from the horse taking fright at the log, and the act of the driver in striking him with his whip.

2. The court correctly charged the jury that the presence of the log in the highway in the *place* stated was not such a defect as would render the township liable; citing *Agnew v. Corunna*, 55 Mich. 428.

3. An injury *caused* by negligence, and an accident not being *prevented* by negligence, are very distinct in operation and effect. The first is covered by the statute cited, and the other is not.

Error to Calhoun. (Hooker, J.) Argued June 5, 1890. Decided June 27, 1890.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Miner & Southworth,* for appellant.

*Charles N. Legg,* for plaintiff.

[The points of counsel are discussed in the opinion.— REPORTER.]

CHAMPLIN, C. J. There is a public highway in the township of Athens, leading from the village of Athens, in a southwesterly direction, into a county adjoining. In its course it crosses a low piece of ground called a "swale" for a distance of about 18 rods, and for a distance of about 12 rods the road-bed of the highway has by the township authorities been filled in to the height of from 4 to 6 feet. The embankment across this swale is from 9 to 14 feet in width on the top, and has a slope of about 45 degrees. In some places the water caused by falling rains or melted snow has washed the slopes, and formed small gullies in the shoulders of the road-bed, from 6 to 7 inches deep at the shoulder, and coming to the surface near the wheel tracks.

In the month of December preceding the accident stated below, a person was hauling a load of logs upon runners along this piece of road, and near the middle of the swale found the sledding so poor that he rolled off one log from his load, which went down the embankment to the fence. This log was about two feet in diameter and 12 feet long. On March 4, 1888, as Ernest L. Beall with his wife and child were riding along this embankment in a buggy drawn by a young and spirited horse, the horse became frightened at the log, and "shied" to the opposite side of the road. Mr. Beall, who was driving, took the whip from the socket, struck the horse, which sprang forward, went down the embankment, upsetting the buggy, throwing its occupants out, and breaking Mr. Beall's arm, for which injury he brings suit for damages against the township. The defendant's witnesses upon the trial testified that by measurement the surface of the road-bed where the accident happened was 14 feet in width, and the embankment 4½ feet high. The plaintiff's witnesses testified that at such place the road-bed on top was 9 feet in width, and the height of the embankment was from 5 to 5½ feet.

The plaintiff, in his declaration, in setting forth the neglect of duty on the part of defendant, avers that upon and along either side of said embankment were the holes and gullies aforesaid, as well as other things calculated to frighten horses while being driven over and along said embankment, and, among other things, a log of great size, to wit, 2 feet in diameter and 12 feet long, and at a point where the embankment was both high and narrow, and within plain sight of horses while being driven along the roadway above it, and where there were no guards or railing to prevent teams, wagons, and carriages from being thrown over and down said embankment; that along the entire length of said embankment there was not

on either side any railing, fence, or guard of any kind to prevent horses, vehicles, and people, while passing along said highway upon the top of said narrow embankment, from being driven or thrown off and over the sides thereof, to the marshy swale below,—all of which several defects, obstructions, and conditions, at the date last aforesaid, and at the township aforesaid, rendered said highway at the place unfit, unsafe, inconvenient, and dangerous to public travel, all of which the defendant well knew.

That by reason of the wrongful and unlawful conduct of said defendant in permitting and allowing the said highway, over and along said embankment, to be and remain narrowed to a width not exceeding 12 feet, and to remain at a height of not less than 6 feet, and in permitting the sides of said embankment to become caved off, and the level part or surface of said embankment to become and to remain narrowed to a width of 9 feet, upon which was said roadway, and the sides of said roadway to become gullied out and full of holes, and in allowing said bridge or culvert, and the entire length of said embankment, to remain and be wholly without any railing, fence, or guard of any kind to prevent teams, horses, vehicles, and people from being thrown from off and over the side of said embankment to the ground below, a distance of 6 feet, at least, and in allowing holes and gullies, and other objects well calculated to frighten horses while being driven along said embankment, to remain at and along the sides of said embankment of said highway, across said marshy swale, on, to wit, February 1, 1888, at the township of Athens aforesaid, the highway became and was unsafe, unfit, and inconvenient, and extremely dangerous for the public travel, of all of which said defendant on, to wit, February 1, 1888, had notice.

Allegation is also made that the defendant, although it,

had reasonable notice and time and opportunity after the highway became unsafe, etc., before the happening of the injuries to plaintiff, neglected to repair the highway or remove the log, or to fill in the holes and gullies, that horses being driven over and along said embankment might not be frightened thereby.

A large number of errors are assigned in the admission and exclusion of testimony upon the trial which we have examined with care, and. without referring specially to them, will overrule them, finding no error in the rulings of the court thereon.

It does not appear from the record before us that the accident was in any manner caused by the gullies and holes pointed out as defects in the road-bed of the highway; and the circuit court charged the jury that the township would not be liable merely because the horse became frightened at the log by the side of the highway, and outside of the traveled path. In submitting the case to the jury he said:

"Your first question then is, was this highway in good repair, and in a fit and safe condition for travel? With this the presence of this particular log has nothing to do. The township is not responsible for its being there, nor is it under obligation to remove it, though, as such things are liable to be left in the highway, the fact may be one that should be considered in determining the character of the highway to be constructed as one of the natural and common incidents of its use."

The important question in the case is whether the narrowness of the highway and the neglect to place railings or barriers along it primarily caused the accident. The township is only liable where the neglect complained of was the proximate cause of the injury. If such neglect was the secondary or remote cause, the township is not liable. The testimony shows conclusively, and without contradiction, that the primary cause of the accident

arose from the horse taking fright at a log at the side of the road, and the act of the driver in striking the horse a blow with his whip. The court correctly charged that the log being in the highway was not such a defect as would render the township liable. *Agnew v. Corunna*, 55 Mich. 428. Suppose the horse had taken fright at some object in or near the highway, 30 rods or more before the plaintiff reached this embankment, and, plaintiff being unable to guide him, the horse had run down the embankment, and caused the injury alleged, would the township then be liable? Or suppose a horse driven along a highway where the traveled road-bed is 9 feet in width had taken fright at some object not a defect in the highway, and had left the traveled track, and the wagon had collided against a stump, would it be proper to submit the question to a jury to say whether the township was liable because it had not removed the stump? The stump, in such a case, would not be the proximate cause of the injury.

In *Smith v. Sherwood Tp.*, 62 Mich. 159, which was a case where a horse was frightened at a hole in a bridge, we held that the court properly instructed the jury—

"That, if they found that the hole was not such a defect as was calculated to frighten horses ordinarily road-worthy, and the township was not in fault in reference to that, or to blame for the fright of the horse in the first instance, then the plaintiff could not recover on account of the defective rail or post."

And in *Agnew v. Corunna*, 55 Mich. 428, which was a case where a horse had taken fright at a stone lying outside of the traveled portion of the highway, turned aside, and upset the buggy, it was said that the statute does not seem to be aimed at indirect and remote mischiefs, but to those which follow from the direct injury caused by the want of repair. And in *Malloy v. Town-*

*ship of Walker*, 77 Mich. 448, the narrowness of the road at the embankment and the neglect to erect barriers were the proximate cause of the accident.

We think, under the facts disclosed in this case, that the defendant was entitled to substantially the instructions asked in its third, fourth, and sixth requests, which were as follows:

"3. If the jury find that there was, at the place where this injury occurred, a wrought portion of this road of sufficient width and condition to allow ordinary vehicles to travel along the same, and the injury in this case occurred by reason of the deviation of the plaintiff from such traveled portion, and such deviation was not caused or rendered necessary by reason of any defect or obstruction immediately in such wrought portion, plaintiff cannot recover.

"4. If the jury find that the injury in this cause was occasioned by the fright of the horse, and that said fright was caused by an object at the edge of the roadway, which was not an obstruction to or in the traveled portion of the way, and that there were no obstacles or want of repair in the road, the plaintiff cannot recover."

"6. If the jury find that the injury was occasioned, not by want of repair in the wrought or traveled portion of the road, but upon fright caused to the horse by objects outside the traveled portion, or other analogous cases, it does not come within the statute, and plaintiff cannot recover."

These requests were asked with reference to the testimony then appearing as to the width of the road-bed and the height of the embankment, and were evidently aimed at the question above discussed as to proximate and remote cause of the injury.

The court instructed the jury further as follows:

" If you find the road defective, but find no defect of which the town had notice a sufficient time to give a reasonable opportunity to repair before the accident, then your verdict should be not guilty; but if you find the highway not in good repair, or not fit and safe for travel, then was that the cause of the accident?"

The court here makes a distinction, and I think prop-erly, between defects in the highway which would author-ize the jury to find it was not in good repair, and the condition of the highway which, though in good repair, renders it not reasonably safe and fit for travel. But the question which he propounds to the jury is not very clear. He asks: "Was that the cause of the accident?" Is the jury to understand the word "that" to refer to the neglect to repair, or to the safety and fitness of the road? Neither is it made clear by what follows. He said:

"Was the fact that the road was out of repair the cause of the accident; that is, would the accident have been avoided had the road been in proper condition? If the horse was frightened by the log, and the buggy was overturned by reason of the unreasonable narrowness of the road, the fact that the log in this instance fright-ened the horse would not excuse the township, provided the accident would not have happened had the road been of reasonable width. So it makes no difference what the horse got frightened at, if the negligence of the town-ship is the cause of the accident not being prevented."

This instruction loses sight of proximate cause and remote cause. An injury caused by negligence, and an accident not being prevented by negligence, are very dis-tinct in operation and effect. One is covered by the statute, and the other is not. If a township can be charged with liability for injuries caused by its negligence, and also for accidents its negligence has not prevented, it comes very near to being an insurer for the safety of travelers passing over its highways, which the learned judge charged the jury it was not. We are not sure that we have not placed a wrong construction upon this por-tion of the charge, neither are we certain that the jury did not.

The judgment is reversed, and a new trial granted.

The other Justices concurred.