THE ST. CLAIR MINERAL SPRINGS COMPANY, LIMITED, V. THE CITY OF ST. CLAIR.

*Negligence—Instructions to jury—Proximate cause.*

1. A request for an instruction in a negligence case, that the jury find a verdict for the plaintiff. if they find that the defendant was negligent in a matter not the proximate cause of the accident, and which leaves out of consideration such proximate cause and the alleged contributory negligence of the plaintiff's servant, is properly refused.

2. It is a much better practice for the trial judge to draw the attention of the jury in a negligence case to the issues they are to determine, and inform them what facts, if found, will constitute negligence and render the defendant liable, than to give them a general definition of negligence.

Error to St. Clair. (Canfield, J.) Argued June 23, 1893. Decided July 25, 1893.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Avery Bros. & Walsh,* for appellant.

*Atkinson, Vance & Wolcott,* for defendant.

GRANT, J. Front street, in the defendant city, crosses Pine river. The old bridge having become defective and unsound, the city took it down, and was contructing a new one in its place. To accommodate the public travel, the city constructed a temporary bridge across the river, outside the line of the street. This temporary bridge consisted of a scow 20 feet wide, 60 feet long, about $4\frac{1}{2}$ feet high, and which would carry from 75 to 80 tons. The river was navigable at this point, and the scow had, occasionally, to be swung out of position to permit the passage of vessels. Aprons were fastened by hinges to the approaches on each

side, which, when the scow was in position, were dropped
onto it for the purpose of affording passage. The scow had
five snubbing posts on each side, 14 feet apart, 4 by 6, and
18 inches high. Scantling, 2 by 4, were spiked on each side
of these posts, and extended 18 inches above them. On
top of these was spiked a railing made of scantling, with
one or two boards below. Midway between these stanchions
were placed posts, which were toe-nailed to the scow. The
height of the water varied with the wind from 15 to 19
inches, according to plaintiff's evidence, and from 8 to 9
inches, according to defendant's evidence.

Plaintiff's servant was driving a horse and wagon loaded
with 48 bushels of potatoes. He had passed over the
scow, the horse and front wheels had passed up the apron,
and the hind wheels were close to it, when the horse
stopped, backed up, the wagon cramped, struck the rail-
ing, which gave way, and the horse and wagon, with its
contents, fell into the river, and the horse was drowned.

The negligence alleged is that the defendant "allowed,
caused, and permitted the bridge to be and remain in an
unsafe condition, and did allow and permit the traveled
portion thereof to become out of repair, and uneven, with
sudden elevations and depressions, of great height and
depth, and in a floating, insecure, and unsteady condition,
and to remain without a sufficient guard or rail along the
sides thereof." It then alleges that, "on account of a
certain declivity in the roadway of said bridge, the horse
and wagon were thrown against the rail along the side of
said bridge, and said rail, being weak, insecure, and worth-
less, gave way, and said horse and wagon were, in conse-
quence, precipitated into the river."

After very clearly and fully stating the claims of each
party, the court gave the following instruction:

"If you find from the evidence that the scow used as
a part of the bridge leaked, and that the defendant failed

to keep it properly pumped out and free from water, and allowed it to become partly filled with water, and that this caused it to settle down into the water, causing, with the load driven by plaintiff's servant, the float to sink down low, so as to make the apron at the south end of the bridge so steep as to be dangerous and unsafe for travel, and that plaintiff's servant attempted to pass over at the south, and was drawing with the horse a load of reasonable weight, and was in the exercise of reasonable skill and caution in the management of the horse and load, and by reason of such unsafe condition of the apron the horse was unable to draw the load over it, and was so compelled to fall back with the load,—and in so going back the wagon broke through the railing or the barrier on the side of the boat,—and was drowned, and you also find that the officers of the city had notice and knowledge of the defective condition of the bridge and railing, and thereafter had reasonable ·time and opportunity to put the same in proper condition, and did not use reasonable diligence so to do, then the plaintiff would be entitled to your verdict.

"If you find the fact to be that when the plaintiff's horse was being driven across the bridge, on the day in question, the passage from the scow to the approach was so steep as that it was not reasonably safe,—whether the steepness was caused by the sinking of the scow from leakage, or by the receding of the water in the river, as shown by the evidence,—but on account thereof the horse was overcome by the load, when he would not have been overcome if the incline had been more gradual, and shall also find that such incline might have been made easier, on the part of the city, by the exercise of reasonable care and skill, and that this steepness and condition caused the loss of the horse, then the city would be liable, providing the plaintiff and the driver were not guilty of a want of ordinary care in the management of the horse, and reasonable time and opportunity to put the bridge in a safe condition occurred, as I have stated."

Verdict and judgment were for the defendant.

Only two of the errors assigned are relied upon:

1. It is insisted that the court erred in refusing to give the following request:

"And if you find that after the horse was overcome

with the load, and the wagon ran back, its progress would have been arrested by a rail of reasonable strength, and the accident prevented, and find as a fact that the rail on the scow was not reasonably strong, and on that account the wagon went over the brink, and the horse got drowned, the plaintiff would be entitled to a verdict."

This request was correctly refused. · It entirely left out of consideration the proximate cause of the accident, and the contributory negligence of the plaintiff's servant. The law was correctly stated in the following portion of the court's instructions:

"If you find that the backing of the horse was not occasioned by the defective condition of the bridge or apron, then it would make no difference whether the railing was sufficiently strong or not, because in that case the defendant's negligence would not be the proximate cause of the injury." *Beull v. Township of Athens,* 81 Mich. 536.

2, Plaintiff's counsel presented a request giving the general definition of negligence, which the court did not give. It was unnecessary to give to the jury this general definition of negligence. In that portion of the instruction above given, the learned circuit judge concisely drew the attention of the jury to the issues they were to determine, and told them what facts, if found, would constitute negligence, and render the defendant liable. His instructions as to contributory negligence were equally clear and explicit. We think that this is a much better practice than it is to give to the jury general definitions.

In instructing the jury as to contributory negligence, the judge said that the driver was required to exercise such care as a reasonably prudent man would be expected to exercise under the circumstances, and that the law does not require that one placed in a position of peril, where he is called upon to act with promptness, should act with perfect prudence and deliberate judgment, but that he is only required, under such circumstances, to use such degree

of prudence as an ordinarily careful and prudent man would be likely to exercise under the same circumstances.

We find no error upon the record, and the judgment is affirmed.

The other Justices concurred.