GEORGE E. HARRIS *vs.* INHABITANTS OF GREAT BARRINGTON.

ELIZABETH W. KILBOURNE *vs.* SAME.

Berkshire.    September 15, 1897. — October 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Defective Highway — Due Care — Absence of Railing — Law and Fact.*

In an action against a town for personal injuries occasioned to the plaintiff by an alleged defect in a highway while driving thereon, he testified that, hearing a team coming behind him, he turned to the right side of the travelled part of the way to let it pass; that his horse, which was a gentle one, shied at something, sprang back, and jumped off the road into a ditch at the side; and that, seeing that his wagon was likely to upset, he turned the horse short across the ditch so as to go off straight and not sideways.   *Held*, that it was for the jury to say whether, if there was any loss of control of the horse, it was or was not momentary, and whether the plaintiff was in the exercise of due care.

If the wrought part of a highway is seventeen feet wide from shoulder to shoulder, having a ditch three feet deep descending from the roadbed at an angle of about forty-five degrees, and the space between the travelled part of the way and the shoulder where the slope of the ditch begins is not more than six or

eight inches wide, the way is not defective by reason of its narrowness; but, in an action against the town for personal injuries occasioned to a traveller on the way, it cannot be said, as matter of law, that there was not evidence for tho jury that the way was defective for want of a sufficient railing.

Two ACTIONS OF TORT, for personal injuries occasioned to the plaintiffs, respectively, by an alleged defect in a highway in the defendant town. The cases were tried together in the Superior Court, before *Bishop*, J., who, after a verdict for the plaintiff in each case, reported them for the determination of this court. If the plaintiffs could not maintain their actions, the verdicts were to be set aside and new trials ordered; otherwise, judgment was to be entered on the verdicts. The facts appear in the opinion.

*H. C. Joyner & A. C. Collins*, for the defendant.

*J. C. Crosby &. J. F. Noxon*, for the plaintiffs.

FIELD, C. J. These two cases come before us on the report of the justice presiding at the trial. A plan and photographs of the place of the accident were submitted to the jury, and produced before us at the argument, and all the material evidence on the question of the liability of the defendant town was reported. The report states the case as it appeared from the evidence as follows:

" These are actions of tort to recover damages for personal injuries to the plaintiffs while driving upon a highway in the town of Great Barrington on November 2, 1896. Both cases were tried with a jury. The jury took a view of the highway where the accident took place. It was admitted that the highway was a public highway, for the condition of which the defendant was responsible, and that the defendant received due notice of the time, place, and cause of the injuries.

" The pleadings may be referred to. On the trial, the testimony of both plaintiffs and defendant showed, and it is admitted, that on the second day of November, 1896, between two and three o'clock in the afternoon, the plaintiffs, who are brother and sister, were driving together from their home in the adjoining town of Egremont to the village of Great Barrington. They were in a market wagon, were carrying a barrel of apples, and were driving a single horse.

" While driving upon a portion of the highway which was

perfectly smooth and free from stones or obstructions, the plaintiff Harris, who was driving, heard a team coming behind him and looked back to see who it was; he then turned to the right side of the travelled part of the highway to let it pass; and while driving on said right side his horse suddenly went off into the ditch. The plaintiff Harris was thrown out on the right hand side of the wagon and was injured, and Mrs. Kilbourne tried to jump out on the left side of the wagon and struck on her feet and knees and was injured. The wagon was not upset, but the plaintiff, seeing it was likely to upset, turned his horse short across the ditch and the horse stopped after going into the ditch. The highway where the accident occurred is one that has a large amount of travel upon it. The plaintiffs were perfectly familiar with it, and had often driven over it. The evidence of the plaintiffs was that the horse was a gentle and proper animal, and there was no evidence to the contrary.

"The plaintiff introduced evidence tending to show that at the place of the accident the road as constructed was seventeen and eight tenths feet wide from shoulder to shoulder, and that deep ditches descended from the sides at an angle of about forty-five degrees; that the depth of the ditch on the side where the accident occurred was three and a quarter feet from the highest point of the road-bed; that the travelled part of the road-bed came within a few inches of the shoulders of the road where the ditches began, and that there was no railing; and claimed that the narrow roadway, deep ditch with a sharp descent near to the travelled way, without railing or guard, constituted a defect which due care on the part of the town should have prevented, and that the town could have prevented the same by making the slope of the bank more gradual, or by a railing. The width of the highway between fences was fifty-nine feet.

" The defendant introduced evidence tending to show that the soil under and adjoining the highway was of clay, and had a tendency to hold water; that many years ago it was almost impassable at certain seasons of the year, especially for loaded teams, on account of the mire; that in 1871 the roadway was raised or turnpiked with ditches on each side to drain off the

water, and has been maintained in about the same condition to the present time, except that it is not quite so rounding as when first constructed. It has been scraped and gravelled from time to time, and about four years prior to the accident the selectmen put stones in the centre of a section of the road where there was a ' clay-hole' or springy place, and covered them with gravel; that as now constructed the travelled part of the road was seventeen feet in width at the place of the accident, with a margin of grass on each side a few inches in width, and the road-bed smooth and free from obstructions, and only slightly rounded.

" The defendant claimed that, if the town maintained a highway in which the travelled portion was of the width shown in the evidence, level, smooth, and free from obstructions, and with shoulders a few inches in width, and a ditch upon each side about three feet in depth, and the evidence showed that the ditches were not deeper than was necessary to properly drain the road-bed, the underlying soil of which was of clay and liable to hold water, and so make the travelling difficult at certain seasons of the year, the highway cannot be said to be defective."

At the conclusion of the evidence, the defendant in each case requested the court to rule that, upon all the evidence, the plaintiff could not recover, which the court refused to do, and submitted the cases to the jury, under instructions not excepted to, and the jury in each case found for the plaintiff. This refusal raises the only questions of law to be considered, and they are whether there was evidence for the jury that the plaintiffs respectively were in the exercise of due care at the time when they were injured, and also evidence that they were injured by reason of " a defect or want of repair, or of sufficient railing, in or upon " the highway, which might have been remedied by reasonable care and diligence on the part of the town, and which rendered the highway not " reasonably safe and convenient for travellers." Pub. Sts. c. 52, §§ 1, 18.

A part of the testimony of George E. Harris, who was driving the horse at the time, is as follows: " I was driving from Egremont into Barrington; I got along as far as between Mr. Kerner's and Mr. Taylor's farm-house; I think about midway,

and there was a team coming up behind me and I turned out to the right to let them pass. I had a barrel of apples in, and a heavy wagon; and as I turned out he started to go by, I think; I don't know whether or just how it was; but just as I got inside and turned out for him to go by, my horse saw something, I don't know what, and shied and jumped off of this bank into the ditch; and of course it threw us out, and I had a barrel of apples in, and I suppose that fell on me, struck me on the head and breast."

He also testified that "there was probably a foot and one half or two feet to the ditch" from the wheels next to the bank where he had turned out, and that "the horse jumped right off; sprung back and went right square off"; that the horse "was on a walk; might have been on a little jog"; that he was well in hand, and was an "ordinary, gentle horse"; that when "I saw that I had got to go off of that place, . . . I fetched the horse around all I could, so as to go straight off"; and that "I thought perhaps if I done that I wouldn't upset. I knew if I went off sideways I would go over then anyways. So I thought if I went off square I would save myself."

On this evidence it was for the jury to say whether, if there was any loss of control of the horse, it was or was not momentary, and whether, under the circumstances, the plaintiff Harris did or did not exercise due care. *Hinckley* v. *Somerset*, 145 Mass. 326.

We are of opinion that the highway was not defective by reason of the narrowness of the wrought or travelled part of it, which seems to have been wide enough, but we think that the plaintiffs might properly contend that the space between the travelled part of the road and the shoulder where the slope of the ditch began was too narrow, the space being at most not more than six or eight inches wide; that the slope was too steep, being at an angle of about forty-five degrees with the road-bed, and that the ditch was too deep, being about three feet deep. We cannot say, as matter of law, that these facts were not evidence for the jury that the highway was defective for want of a sufficient railing. Whether a highway is reasonably safe and convenient for travellers, or is defective, is ordinarily a question of fact for the jury. What the test as

matter of law is has been recently considered by this court in *Scannal* v. *Cambridge,* 163 Mass. 91, and in *Tisdale* v. *Bridgewater,* 167 Mass. 248. In the present cases we cannot say, as matter of law, that there was not sufficient evidence to be submitted to the jury that the highway was defective.

*Judgment on the verdicts.*