BELL v. VILLAGE OF WAYNE.[1]

1. HIGHWAYS—UNCONTROLLABLE HORSE—SHYING.

A horse which becomes frightened, and backs or plunges so that, even with proper management, it cannot be kept within a good roadbed, wide enough to permit teams to pass in safety, is beyond control, within the rule relieving municipalities from liability for certain accidents where a horse is uncontrollable, but charging them where it "simply shies to an extent common and probable among horses."

2. SAME—ABSENCE OF BARRIERS—INJURY TO DRIVER—PROXIMATE CAUSE.

Where the driver of a horse, which becomes uncontrollable through fright not attributable to the negligence of the municipality charged with keeping the highway in repair, sustains injuries which would have been avoided had proper barriers been maintained at the place of the accident, the fright, and not the lack of barriers, is, as a matter of law, the proximate cause of the injuries, and hence no action will lie against the municipality.

MONTGOMERY, C. J., and MOORE, J., dissenting.

Error to Wayne; Hosmer, J. Submitted April 19, 1899. Decided March 27, 1900.

Case by Andrew Bell against the village of Wayne for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Af-

---

[1] Rehearing denied May 18, 1900.

firmed.    The facts are stated in the dissenting opinion of
the chief justice.

*Selling & Hatch*, for appellant.

*Cutcheon & Stellwagen*, for appellee.

GRANT, J.   The distinction, now contended for in cases
of this character, was not lost sight of by the writer of the
opinion in *Doak* v. *Township of Saginaw*, 119 Mich.
680 (78 N. W. 883).   The differences between that case
and this are these: In this case the banks were higher
and steeper, at least on one side.   In the *Doak Case* the
frightened horse backed into the ditch.   In the present
case the backing horse was struck by the plaintiff, started
for.ward, crossed the road, and went down the embank-
ment.   The roadbed in this case was wider than that.
Here the roadbed was 17 feet wide, and in good condition.
In both cases the horses were frightened, and not by
anything for which the township was at fault.   In the
*Doak Case* it was uncertain what frightened the horse
and caused him to back.   In the present case it was two
boys in a tree.   The plaintiff lost control of his horse, so
that he was unable to keep him within the traveled way,
17 feet wide.   He testified that there would have been no
trouble if the horse had not seen the boys in the tree.

Whether this is a case where barriers should have been
erected I do not deem it necessary to determine.   In Mas-
sachusetts the statute expressly makes townships liable
for the failure to erect barriers.   What the decisions
would be if their statute were like ours is, at least, doubt-
ful.   In *Hinckley* v. *Inhabitants of Somerset*, 145 Mass.
326 (14 N. E. 166), the stone wall which formed the bar-
rier was 2 feet high.   On the outside of the wall was
water 10 feet deep, the surface of which was about 8 feet
below the top of the wall.   The horse became frightened
at some oyster boats, and ran into or upon the wall, and
got astride of it with his hind legs.   That case is in direct
conflict with *Beall* v. *Township of Athens*, 81 Mich. 536

(45 N. W. 1014). It is impossible to reconcile them. In *Harris* v. *Inhabitants of Great Barrington*, 169 Mass. 271 (47 N. E. 881), it was held that the roadbed, 17 feet wide, was not defective by reason of narrowness, but that there was evidence that the highway was defective for want of a sufficient railing.

If, as my Brother Montgomery says, the rule has not been made entirely clear by the decisions, it undoubtedly results from the difficulty in determining when the driver has, and when he has not, lost control of his frightened horse. In the *Doak Case* the horse had become so unmanageable that the driver could not prevent his backing. Doak's counsel said in their brief: "The driver did his utmost to prevent the backing." In the present case the frightened horse was backing, was struck by the driver, and had become so unmanageable that he could not keep him within the limits of the traveled road, wide enough for two teams to pass with perfect safety. Plaintiff did his utmost to keep the horse in the road, but failed to do so. We held in *St. Clair Mineral Springs Co.* v. *City of St. Clair*, 96 Mich. 463 (56 N. W. 18), that where a horse stopped, backed over the apron of a bridge against an insufficient railing, fell into the water, and was drowned, the city was not liable. In that case there was no fright. The horse started up the bank, and backed because of too great a load. Under the contention of the plaintiff in this case, if the horse, instead of backing from an overload, had backed from fright, and the jury could find that the driver had lost only temporary control, the city would have been liable. In neither case was the city or village responsible for the proximate cause of the accident. What difference, in principle, between the two cases? Is it logical to say that, where the horse backs from other cause than fright, the defendant is not liable, but where he backs from fright it is liable, provided the jury are able to find that the driver had not lost complete control of him? There certainly is no difference in the liability between backing and shying, or running down an embankment or into a ditch.

In *Beall* v. *Township of Athens*, the horse became frightened at a log upon the side of the highway. The driver struck his horse, which jumped forward, and upset the buggy. In this case the horse became frightened, was struck, could not be kept within the highway, and went down the embankment. Where is the difference in principle or in the facts between that case and the present? Both horses went over the side of the road because their drivers were unable to keep them within the traveled way.

In *Lambeck* v. *Railroad Co.*, 106 Mich. 512 (64 N. W. 479), plaintiff's horse had run for a block, and ran into the end of a car standing in the highway. Plaintiff was unable to keep him from running the carriage against it. It was held that the horse was beyond control.

In *Agnew* v. *City of Corunna*, 55 Mich. 428 (21 N. W. 873, 54 Am. Rep. 383), it was claimed that the horse was frightened at a large stone standing in the highway between the roadbed and the gutter, turned up a side street, and upset the buggy. It was there said: "If the stone had anything to do with the action of the horse and damage to the buggy, it was by frightening the animal, and not by hurting or impeding him." If the horse in that case had shied or run into the gutter, or, running down the side of the roadbed, had caused the buggy to sway and upset, would not the rule of law have been the same?

In *Bleil* v. *Railway Co.*, 98 Mich. 228 (57 N. W. 117), the horse was hitched, broke away, and ran into iron rails piled upon the street. If the driver had been in the buggy when the window fell, and the horse had started and run upon the rails, causing the same injury, would this court have said that the rails, and not the falling of the window, were the proximate cause of the injury, if the jury were enabled to find that the horse was not beyond control?

What is the principle or rule upon which these decisions are based? It is that the primary cause of the accident is the fright of the horse, not the defect in the highway. Why should a jury be left to speculate upon the question

whether the driver could have controlled his horse but for the defect in the highway? In *Langworthy* v. *Township of Green*, 95 Mich. 93 ( 54 N. W. 697), the wagon struck a log, which was from 4 to 18 inches above the roadbed, and near the center thereof. The horses had not left the traveled road, but had, for some reason which did not appear, shied a little to one side. It did not appear that the horses were running, or were going at an unsafe speed for a properly-constructed roadbed. By referring to the same case in 88 Mich. 207 ( 50 N. W. 130), it will be seen that the plaintiff was driving at a slow trot when the log was struck.

We are not concerned with the rule in other courts, if this court has established a rule and followed it. In the cases above cited, I think we have established and recognized the rule to be that a township is not liable, under our statute, for the failure to maintain barriers, where the horse leaves a traveled highway, which is in good condition and wide enough to drive upon with safety, through any cause for which the township is not responsible. When a horse has become so frightened that, under proper management, he cannot be kept within a good roadbed 17 feet wide, he is beyond control, under our decisions, and the fright, not the absence of barriers, is the cause of the accident. Upon no other rule can these decisions, in my opinion, be sustained.

I think the learned circuit judge was correct in directing a verdict for the defendant. Its reversal would, in my judgment, result in overruling the cases above cited, and approved in *Doak* v. *Township of Saginaw*.

The judgment should be affirmed.

LONG, J., concurred with GRANT, J.

HOOKER, J. ( *concurring* ). The doctrine that a township is not liable for an injury, where, though negligent, such negligence is not the proximate cause of the injury, has been asserted and reiterated many times by this court. Like other rules, it is invoked in many cases where its

application is of doubtful propriety, and doubtless in some to which it should not be applied. It is not unnatural that minds should differ in close cases, and there is always danger that a misapplication shall make it more difficult to adhere to the rule, and easy to extend it. There is but one proper way to deal with such questions, and that is to adhere to the underlying principle, and not put too great emphasis upon similar, but not necessarily analogous, decisions. If this is done in this case, I am of the opinion that its proper solution need not be difficult. It has been several times held that where a horse, while running away, strikes an obstruction, the resulting injury is due to the running away, and not to the obstruction, because the former, and not the latter, is the proximate or moving cause of the injury. The law requires highways to be kept in condition for the ordinary uses, and it expects the driver to be in control of his horse, and does not assume to compensate those who are injured through a failure to maintain such control. The decisions do not refuse relief upon the ground that the horse was running away, but upon the ground that the uncontrolled impulse of the horse was the moving, *i. e.*, proximate, cause. Where the loss of control is due to the negligence of the town, it has been held that the township is liable, but, where it is due to other causes, the contrary has been usually held.

We are cited to cases which hold that the mere shying of a horse is not sufficient to exonerate a township, the reason being given that shying is to be expected of a horse, and that control cannot be said to be lost if the horse is so far under the control of the driver as to be immediately stopped or brought back to the traveled way. It makes little difference whether we say that the horse was under control of the driver when he shied, or that the want of control was but momentary, and to be expected at times with any horse, from his common and known habit, and therefore an exception to the rule. In neither is ground for breaking down the rule. The case can, at most, be treated as an exception, and, though a precedent

governing cases where a horse shies suddenly a little out of the beaten track, it does not follow that the exception should cover all cases where the want of control is of short duration, or where caused from some vice or habit which cannot be said to be found in horses in general.   A horse which, through fright at an object on one side of the road, leaves the traveled way, and, notwithstanding the utmost efforts of the driver, cannot be made to return to it, and ultimately crosses the highway ditch, or goes to the verge of an embankment, which slides down with him, has done something more than to merely shy.   To "shy" is defined as "to start suddenly aside as if a little frightened."   So, if the horse should rear, and fall against the carriage, throwing all down an embankment, or if he should refuse to obey the driver to go forward, and back up instead, overturning the buggy against a tree in the highway, or going down an embankment, the horse is beyond control, as much as though running away, and, to my mind, much more than when merely or momentarily starting and shying.

If these instances are enlargements of the adjudicated instances of shying, they are not within the exception, and, if one after another they are included within the exception, the rule will soon give way under the evolution of the exception.   It is as much the duty of the citizen to drive reasonably tractable horses as it is of the community to maintain reasonably safe highways, and as much the duty of courts to hold the former to the consequences of a failure of the performance of his duty as the latter; and it is, to say the least, fairly debatable whether the doctrine of proximate cause is not a reasonable and just one.   It is not yet the law that the highways must be so level and smooth that a horse cannot capsize a carriage, and provided with barriers so strong that a team cannot break them down, to the injury of the driver.   Barriers may be required in some cases, as where the highway and its surroundings are of such a character as of themselves to create the danger of fright; but we may take judicial

notice that barriers are usually limited to such places, and
are not common along our highway ditches or causeways.
The *Case of Doak* was correctly decided, in my opinion.
The present case is substantially on all fours with *Beall*
v. *Township of Athens.* The other cases are not cited,
because referred to in the opinions of my brethren.

I think the judgment should be affirmed.

MONTGOMERY, C. J. (*dissenting*).   This is an action
for personal injuries claimed by the plaintiff to have been
caused by the negligence of the defendant.   The injuries
were sustained by the plaintiff, May 17, 1892, upon a
highway within the corporation limits of defendant.   The
highway in question crosses the River Rouge a few rods
north of the place where plaintiff was injured, and the
approach to the bridge crossing the river is elevated at the
point where the accident happened 8 feet 10 inches on the
west side, the descent being absolutely perpendicular, and
8 feet 6 inches on the east side, the descent being a slope
above the surrounding country.   The approach to the
bridge is the same width as the bridge where they join,
but a few yards north of the bridge, and at the point
where the plaintiff was injured, it is but 17 feet in width.
There was no barrier on either side of the approach to pre-
vent travelers from going off the road down the embank-
ment on either side.   There was a plum tree a little west
of the roadbed, at a point where the approach to the bridge
ended, and a few rods south of the place of the accident,
towards the main part of the village.   Upon the morning
in question, Andrew Bell, the plaintiff, was driving along
the said road towards the main part of the village, on his
way to the home of his sister-in-law, Susan Bell, who
lived on the other side of the village.   He was driving his
horse, which he described as gentle, and not given to
shying, attached to his buckboard.   He had crossed the
bridge, and was upon the southern approach to the same,
at a point nearly abreast of the piling, when the horse
caught sight of some boys in the plum tree picking

blossoms, and thereupon started back. The buckboard wheels were cramped, so that, if the horse continued to back, Bell would have been thrown out backwards, down the abrupt descent upon the west side, there being no barrier to arrest the progress of the vehicle. To save himself from this danger, he struck the horse one blow with the whip, and, in obedience to the blow, the horse started forward at a slow pace (about half as fast as a man can walk). The loosely-packed earth on the east side of the approach gave way, the horse slipped down the east side of the approach, and plaintiff was thrown out, and sustained the injuries complained of. The evidence shows that the horse was not running away; that, at the most, he took but three or four steps back, and that plaintiff did not lose control of the horse; and that the horse had his own way but momentarily, at the most.

The foregoing is the statement of facts taken in the main from plaintiff's brief, and we find that there is testimony tending to support the statement in every particular. As the circuit judge directed a verdict for the defendant, the inquiry is whether, assuming this state of facts, the plaintiff was entitled, under any theory, to take the judgment of the jury as to the question of defendant's liability. The learned .circuit judge, while stating that he was unable to reconcile all that this court has said in various cases, regarded it as *stare decisis* that the presence of those boys in the plum tree and the consequent fright of the horse was the proximate cause of the injury to plaintiff, and directed a verdict for defendant.

We think it must be conceded that this court has not made the rule in this class of cases entirely clear. It is equally true that other courts, in dealing with the broad question of proximate cause, as well as in dealing with the more restricted one as to what is to be deemed an intervening cause, such as relieves a municipality from responsibility for defective highways, have encountered difficulties at every turn, and have not always dealt with the question logically. See this illustrated in cases commented on by

Judge COOLEY (Cooley, Torts, pp. 76, 77, and also at page 622 *et seq.*). At page 70, Judge COOLEY states one of the rules relating to the subject as follows:

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."

In a very able discussion of the causal connection by Mr. Wharton, at section 103 of his work on Negligence, he reaches the conclusion that where a township is negligent in failing to keep its highway in repair, and an injury results from a frightened horse striking against a defect in the way from which, if he had not been frightened, he could have been safely guided by his driver, the municipality is not liable to an action, for reasons fully stated by him. He adds, however:

"This mode of reasoning is inapplicable if the evidence is that the horse, being driven with due care, simply shies to an extent common and probable among horses, and when shying he deflects a few feet from the beaten track, and then strikes against the defect. In this case, as such shying is part of the natural and probable habits of horses, and does not, when only producing a slight change of course, make the horse unfit for use in a public road, the road-making authorities are liable for the consequences."

See, also, Whart. Neg. § 983.

There are many cases which, as pointed out in *Langworthy* v. *Township of Green*, 95 Mich. 93 (54 N. W. 697), hold to a still stricter rule of liability, and maintain that the fact that the horse is frightened, and at the time uncontrollable, does not relieve the municipality of liability.

We think the better rule is that quoted from the text of Wharton on Negligence, and this rule we find abundantly supported in those jurisdictions in which the stricter rule, above adverted to, does not prevail.    The case of *Wright* v. *Inhabitants of Templeton*, 132 Mass. 49, is very similar in its facts to the present.    The plaintiff's horse was frightened by the lantern of some boys fishing.    The horse backed up, cramped the wagon, and carried i against the railing, which gave way.    Defendants pre ferred a request that, if the horse backed a distance of 20 or 30 feet, the plaintiff could not recover.'    The court held that this request was properly refused.

It was held, in effect, in *Hinckley* v. *Inhabitants of Somerset*, 145 Mass. 326 (14 N. E. 166), that the township might be liable if the driver did not lose control of the horse, or lost control for a moment only, and either regained control, or would have regained it but for a defect in the way.    See, also, *Harris* v. *Inhabitants of Great Barrington*, 169 Mass. 271 (47 N. E. 881).

The case of *Olson* v. *City of Chippewa Falls*, 71 Wis. 558 (37 N, W. 575), is quite similar in its facts to the present.    It was said:

"The team instantly and suddenly became frightened by some suddenly appearing object, * * * and as instantly and suddenly backed.  * * * Such a movement of any team would not be at all uncommon under such circumstances, and so the city might have anticipated when it left the steep bank of the creek so unguarded in such a place."

The distinction contended for in the present case was again noted by this court in *Gage* v. *Railroad Co.*, 105 Mich. 335 (63 N. W. 318), and recognized in *Simons* v. *Township of Casco*, 105 Mich. 588 (63 N. W. 500), but was clearly lost sight of in *Doak* v. *Township of Saginaw*, 119 Mich. 680 (78 N. W. 883).    In the last case a motion for a rehearing should be granted.    We think the plaintiff was entitled to go to the jury.

It is contended in this court that the highway at this

point was a part of the bridge.   It does not appear that the point was made on the trial, and, as the facts are not as fully developed as they may be on another trial, we do not discuss it.

The judgment should be reversed, and a new trial ordered.

MOORE, J., concurred with MONTGOMERY, C. J.