## BRIGGS *v.* TOWNSHIP OF PINE RIVER.

HIGHWAYS AND STREETS—PERSONAL INJURIES—PROXIMATE CAUSE —INJURY TO BICYCLE RIDER—EVIDENCE.

In an action against a township for injuries sustained by plaintiff in falling from his bicycle and over the edge of a culvert on a highway which it was the duty of defendant to keep in repair, evidence examined, and *held*, that the undisputed testimony of plaintiff and his witnesses showed that neither the hole in the road complained of, the narrowness of the culvert or approaches, nor the lack of barriers constituted, singly or together, the proximate cause of the accident, and that the accident was caused by reason of the bicycle slewing in the sand, or striking a stone, or in some other manner undisclosed getting out of plaintiff's control and throwing him over the bridge, for which the township was in nowise responsible.

Error to Gratiot; Searl, J. Submitted October 24, 1907. (Docket No. 129.) Decided December 10, 1907.

Case by Otto Briggs against the township of Pine River for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*William A. Bahlke* and *James G. Kress*, for appellant.

*George P. Stone*, for appellee.

BLAIR, J.   Plaintiff brought this action against defendant township to recover damages for injuries sustained by him by reason of falling from his bicycle and over the edge of a culvert on a highway which it was the duty of defendant to keep in repair.   The first count of plaintiff's declaration alleged that the highway was not reasonably safe and fit for travel, for the reasons, substantially, that the culvert was too narrow, that the approaches were narrow and unsafe and were built up from 12 to 15 feet above the surface of the highway, and that there were no barriers, railings, or other protection to prevent travelers from being precipitated over the embankments; that the highway was so constructed as to conduct the water on the highway in time of rains so as to convey it into the wrought or traveled portion of the highway and to a point very nearly, if not quite, over and upon the top of said culvert, where it was conveyed on account of said grade to the north of said culvert and ran over said embankment, "by reason of which construction, the said water in washing its way over the top of said culvert, produced and caused the said highway over, upon and at the point of said culvert, to become washed and dug out and a ditch to be formed thereby, which intersected the wrought and traveled portion of said highway from a point where the north wagon track at said place would lead to the north bank of said approach, and said ditch or washout was of a depth of from 4 to 12 inches, and which ditch intersected the foot-path leading over said culvert to the north of said wrought and traveled road.   * * *   That owing to said defective, dangerous and unsafe condition of said highway, and by reason of the premises as aforesaid, he was thrown from his bicycle without any fault," etc.

The second count of the declaration averred that the

narrowness of the culvert and the want of railings or barriers concurred to cause the injury.

The highway ran in a westerly direction at the point where it was crossed by the culvert, which was 18 feet wide, north and south, and 13 feet wide, east and west. On the morning when plaintiff received the injuries of which he complains, he approached this culvert from the east upon his bicycle. He had known this road for many years and was overseer of highways in 1903. The only defect in the traveled portion of the road was a depression, or, as some of the witnesses called it, a ditch, washed out by the surface water flowing down the road. This ditch "starts on the traveled part of the road and cuts through the embankment to the north, where it is 4 or 5 feet wide, and it runs from nothing to a foot or 14 inches deep. It begins at the north wagon track. At the track it has no special depth but gets deeper as it goes north to where it breaks through the bank and throws the water into the ravine."

Ordinary vehicles were able to pass safely over or through this so-called ditch or depression, but it was an obstruction to bicyclists, who turned around it. Plaintiff testified that he was familiar with the bicycle path.

"It was on the north side of the highway, that is, it was north of the wheel track, the wagon road, on the smooth ground, and it followed down to the side of the road, on the north side until it came within say perhaps 8 or 10 feet of this washout on the north side where the water runs from the wagon track out of the road. There it turned into the road, into the wagon part, that is, the wagon track of the road, and went over the culvert, then it turned to the north, on the north side of the road and on up the other hill.  *  *  *

" *Q.* What is the fact as to whether that was a convenient and suitable path for bicyclists?

" *A.* Why, I had always rode over there and he (meaning his companion who had preceded him) had always rode over there. I never had no accidents nor he neither until this time.

" *Q.* Describe how you went over that place at the time

in question; give us the track and just exactly how you went over and what you know or remember about it.

"*A.* Well, we were coming down that hill, I remember of knowing—recollecting and knowing that that place was there.

"*Q.* That is the ditch you mean?

"*A.* Yes, sir, and we always slowed up in order to go by it, and turned out into the wagon road, and as I went by it, I came out into the wagon track.

"*Q.* Which wagon track, the north wagon track?

"*A.* Well, I came out into the center of the road between the two wagon tracks and went by this hole, and as I went by it, I don't know how far I had got by it, but the wheel slipped or slewed or struck a stone or something, I don't know what, I don't remember, but when I came to myself I was down in that hole on the north end of the culvert. * * *

"*Q.* As you turned to avoid the ditch, in the bicycle path and guide your bicycle to the left or to the south, into the traveled portion of the road, how far east of the hole was it that you began to turn into the highway?

"*A.* Well, six or eight feet.

"*Q.* And as you started west towards and over the culvert what line were you taking with reference to the north edge of the culvert, how far in, tell us about where you were?

"*A.* Well, it was a little to the north side near the wheel track, near the north wheel track.

"*Q.* And how far from the north edge of the culvert?

"*A.* About—well, two or three, perhaps between three and four feet.

"*Q.* Would that be your best judgment, between three and four feet?

"*A.* Yes, sir. I think I was right over the culvert when I fell off from it and I fell directly to the north and I struck right in the bottom of the ravine and in the deepest part of it. * * * I couldn't say whether the wheel struck a stone and throwed me out of balance or whether it struck the sand and throwed me out of balance.

"*Q.* You knew there was some sand there, do you not?

"*A.* I understand there was some sand there.

"*Q.* You were coming from the east as we call it, on a down grade?

"*A.* Yes, sir.

"*Q.* And you were in a bicycle path on the north side of the wheel track?

"*A.* Yes, sir.

"*Q.* And when you came down to this point near— within six or eight feet of where this water had broke over the north wheel track of the road, you then turned out into the road?

"*A.* Yes, sir.

"*Q.* And as you turned out into the road you went into that sand, struck then right into that sand?

"*A.* No, sir, the sand was deposited farther to the west than that hole.

"*Q.* A little farther than that hole?

"*A.* Yes, sir.    *    *    *

"*Q.* And as I understand you, you went on past that depression?

"*A.* Yes, sir.

"*Q.* And when you got just a little bit past that depression then something happened to you?

"*A.* Yes, sir.

"*Q.* Do you know just how far you had got past the depression?

"*A.* Well, sir, I had got four or five or six feet, somewhere there.

"*Q.* And then your wheel went out from under you?

"*A.* Yes, sir.   I knew every inch of that road; I traveled it every night and morning and was familiar with it. I knew that it was necessary for me to turn out when I came to this depression and necessary for me to go through a little sand in going over the culvert.   *   *   * I do not know whether I struck a stone or whether I struck sand or what the bicycle struck, nor do I know that the bicycle slewed, but I did know that something occurred that threw me out of balance and when I was thrown out of balance I suppose I lost control of the wheel.   When I lost control of the wheel, I did not pitch over the wheel, I went off to the side of it; there was a little time after the wheel slewed there that the wheel was uncontrollable and I sought to control it as anybody would.

"*Q.* And then you fell off from the wheel?

"*A.* I did, sir.

"*Q.* And either the wheel slewing in the sand or else it striking some obstacle and you don't know which it was, threw your wheel out from under your control?

"*A.* Threw it out from under my control.

"*Q.* And that caused you to fall?

"*A.* That caused me to fall.    *    *    *

"*Q.* As a matter of fact, when you first struck into that sand you wasn't going straight, were you ?

"*A.* Well, now, I was following the bicycle path, following the path that I had always followed.

"*Q.* That didn't go straight, did it, through the sand ?

"*A.* Well, yes, sir, it did, went straight across that. It went straight across the culvert until it got to the west side and there it veered to the north into the main track of the bicycle on the north side of the road.    *    *    *

"*Q.* Then, as I understand you, that if it hadn't been for your wheel either slewing in the sand there just as it did then, you would have passed around that hole and gone on over the culvert just as you always had before ?

"*A.* I would have, sir.    *    *    *

"*Q.* And when you went out around this place in question so you got to going straight down the road again, were you between the wheel tracks ?

"*A.* I was nearer to the north wheel track than I was to the south.

"*Mr. Stone:* But you were in the traveled part of the road ?

"*A.* I was in the traveled part of the road.

"*Mr. Bahlke:* Was that where the bicycle path was ?

"*A.* That was where the bicycle path was at that place.

"*Mr. Stone:* Which part of the culvert had you been accustomed to running over with your bicycle ?

"*A.* Well, practically on the north half.

"*Q.* You had been accustomed to running over there ?

"*A.* Yes, sir.

"*Q.* And then on this morning in question you were steering around to get over the north part of the culvert ?

"*A.* Yes, sir, where I always had.

"*Q.* You, as I understand it, was perfectly familiar with the bicycle path ?

"*A.* Perfectly familiar, because I had rode it night and morning for three weeks anyway before that.

"*Q.* Twice a day right along ?

"*A.* Twice a day right along, have been over the road twice a day ever since, excepting while my arm was broke.

"*Q.* If you went off from the bicycle right over the culvert, how do you account for the fact that the bicycle didn't go off ?

"*A.* Well, sir, I don't know, simply I must have let go of the bicycle when I lost control of it and went off from it; a man naturally would throw his hands up to save himself and I knew that I was going off from there and realized it at the time and I done all in my power to save myself all I could."

At the conclusion of plaintiff's proofs, the court, on motion of defendant's counsel, directed a verdict in favor of defendant, on the ground that the negligence of the defendant, if any such were proved, was not the proximate cause of the plaintiff's injuries. Plaintiff brings the case to this court for review upon writ of error, contending that the court should have submitted the case to the jury, for various reasons argued in the brief.

We agree with the circuit judge that the undisputed testimony of the plaintiff and his witnesses shows that neither the hole in the road, the narrowness of the culvert or approaches or the lack of barriers constituted, singly or together, the proximate cause of the accident, but that such accident was caused by reason of the bicycle slewing in the sand or striking a stone or in some manner undisclosed getting out of plaintiff's control and throwing him over the bridge. For this the defendant township was in nowise responsible, and plaintiff is not entitled to recover. *Bell* v. *Village of Wayne,* 123 Mich. 386 (48 L. R. A. 644).

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.