IRWIN *v.* TOWNSHIP OF BYRON.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—BARRIERS ON HIGHWAY.
   It should have been determined as a matter of law that defendant township was not negligent for failing to place barriers at the side of the roadway or traveled portion of the highway, 14 feet in width, where a fill began about half way up a long steep hill, and where it had a grade of about two feet in 30, without any dangerous or abrupt

descent at the side of the track, so that a person could drive at right angles to the beaten path for 30 feet without encountering danger.

2. SAME—PROXIMATE CAUSE—ANIMALS.

Testimony that one of plaintiff's team playfully or wilfully forced the other horse to the side of the highway and down the embankment in the dark, that the team traveled 53 feet before plaintiff could stop it, that the horse did not shy at a washout which existed farther up the hill, and that if barriers had been erected the accident would probably have occurred, *held*, to present no question of negligence for a jury, and that the proximate cause was the shying of the colt.

Error to Kent; Brown, J. Submitted October 9, 1913. (Docket No. 12.) Decided December 19, 1914.

Case by Samuel Irwin against the township of Byron for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Earl F. Phelps,* Prosecuting Attorney (*E. M. Davis,* of counsel), for appellant.

*Thompson & Temple* and *Myron H. Walker,* for appellee.

BIRD, J. The plaintiff recovered a judgment in the Kent circuit court, for personal injuries which he claims to have incurred in consequence of a defective highway in defendant township. It appears from the record that the plaintiff was the owner of two farms in Byron township. In the highway lying between them was a long, steep hill, known as Whitcomb Hill. Toward evening on the 15th day of April, 1910, plaintiff hitched his horses to a lumber wagon and started for his other farm a mile and a half away, to get several swarms of bees. His daughter and four young people accompanied him. The going part of the trip was made up the hill without incident. Late in the evening, he started home with the bees, and every-

thing went well with him until he had gone about two-thirds of the way down the hill, when his nigh horse jumped sideways and crowded the "off" horse into the ditch, and then both started in a southwesterly course and continued for 53 feet until the wagon was stopped by an obstruction. The young people jumped out, but the plaintiff was thrown out and injured.

The negligence alleged was the failure of the township to erect barriers. The defendant contends that the trial court should have directed a verdict in its behalf, on the ground that it was obvious that the highway was in a reasonably safe condition without barriers, and also on the further ground that the proximate cause of the injury was the shying of the colt and not a lack of barriers.

The plaintiff was unable to give much of an account of how the accident occurred. He said:

"I drove very carefully until I got to the Whitcomb Hill and proceeding down that to turn around that washout, why, I supposed I was right, all right, and all to once one of the horses went down someway and the other one after him, and that is the last I could remember of that, and I went with them, and I brung up within 15 feet of the bottom of the hill."

Plaintiff's daughter, however, was able to give a very clear description of what took place. She testified that the three-year old colt was on the "nigh" side and the four-year old on the "off" side. She further testified:

"Q. When you got down to a point where you left the highway, the colt over here became frightened at something and started the other horse right off the other way, didn't he?

"A. I don't think he was frightened at anything; he just simply, as a colt, jumped sideways. I didn't see anything for him to get frightened at; I don't think he was frightened.

"Q. Then we will leave out whether he was fright-

ened. He jumped sideways, and that steered the team right off in a southwesterly course, didn't it?

"*A.* Yes, sir.

"*Q.* They turned abruptly, when this colt on the left-hand side jumped in toward the other horse, didn't he?

"*A.* Yes, sir.

"*Q.* And that turned the team right around so they went right straight down the incline in a southwesterly direction?

"*A.* Not just at that moment, it didn't.

"*Q.* They didn't stop, did they?

"*A.* The other horse tried to keep his footing on the road, and he couldn't.

"*Q.* What is the reason he couldn't?

"*A.* Because there was a little bank there.

"*Q.* You mean that little ditch that ran along down the side of the beaten track?

"*A.* Yes, sir.   *   *   *

"*Q.* What did he do when he got to that little ditch?

"*A.* He was shoved in there by the other horse, at least kind of crowded.

"*Q.* Crowded in there by the other horse?

"*A.* Yes.

"*Q.* And then they took a southwesterly course right down through the brush there, didn't they?

"*A.* Why, that one horse tried to keep his footing and he couldn't, and he went down that little bank, and he just simply lost his balance and he went right down the hill.   *   *   *

"*Q.* And before they abruptly turned out of the highway they were right in the beaten track?

"*A.* As far as I can remember they were.

"*Q.* You couldn't see any other reason for that colt crowding the other horse down off that incline, through that little ditch and down the incline, unless he did get scared, could you?

"*A.* Yes, sir.

"*Q.* What is that? Because he was a colt?

"*A.* Yes, sir.

"*Q.* I see. It was because he was a colt, and colts are liable to do those things?

"*A.* Yes, sir.

"*Q.* This horse on the right-hand side, the off horse, he tried to hold the colt in the road, didn't he?

"*A.* Yes, sir.
"*Q.* And he couldn't do it, could he?
"*A.* No, sir."

The point at which plaintiff's team left the highway was 210 feet from the bottom of the hill. The roadbed at that point was 14 feet wide and directly west therefrom, for 30 feet, there was a fall of only about 2 feet. That stretch of ground was separated from the traveled part of the highway by a ditch, not to exceed a foot in depth. By turning abruptly as the team did, one could have driven to the west for 30 feet without encountering any serious danger. The idea of barriers is usually suggested to the highway authorities where there are dangerous places just outside the traveled part of the highway. No such danger existed here. The team made its exit from the highway at about the point where the "cut" left off and the "fill" began, and had his team been under control he ought to have stopped them within the 30 feet. But whether he could or not, we think it can be said as a matter of law that where the wrought portion of the highway is 14 feet wide, and where one can drive with reasonable safety for 30 feet at right angles therefrom before reaching a place of danger, the highway is reasonably safe and fit for public travel without the protection of barriers. Usually in these cases the question is one for the jury to determine whether barriers should have been provided, but in this case there is no contention over the material facts, and they are such that we can say as a matter of law that no such obvious danger existed at the place in question as to require the erection of barriers. See *Kingsley* v. *Township of Bloomingdale,* 109 Mich. 340 (67 N. W. 333).

The testimony of plaintiff's daughter, which is the only clear account of how the accident happened, convinces us that the playful actions of the colt in crowd-

ing its mate off from the traveled way was the proximate cause of plaintiff's injury, and not the lack of barriers. If barriers had been erected at that point and the colt had crowded his mate in like manner, and then both had started directly down the hill at the same rate which they went off at an angle, the results probably would have been quite as disastrous. But it is argued that the colt simply shied and there was not a loss of control; but, if there were a loss of control, it was only temporary. We think that the testimony establishes the fact that the actions of the colt were something more than shying, and that there was something more than a temporary loss of control upon the part of plaintiff, as the combined effort of plaintiff and the colt's mate was unable to prevent the colt from leaving the traveled part of the way and going a distance of 53 feet before being brought to a stop by the wagon falling into a depression. The proximate cause of plaintiff's injuries was clearly the shying of the colt, and, as the township was in no wise responsible for the shying, no recovery should have been permitted. *Beall* v. *Township of Athens*, 81 Mich. 536 (45 N. W. 1014); *Kingsley* v. *Township of Bloomingdale*, 109 Mich. 340 (67 N. W. 333); *Doak* v. *Township of Saginaw*, 119 Mich. 680 (78 N. W. 883); *Bell* v. *Village of Wayne*, 123 Mich. 386 (82 N. W. 215, 48 L. R. A. 644, 81 Am. St. Rep. 204).

Whether the conduct of the colt was induced by a spirit of playfulness or wilfulness is of no importance, as the township would not be responsible for its conduct in either event, and, indeed, there appears to be no claim that the township was responsible for his conduct. Something has been said in the briefs concerning a washout that was located further up the hill. The proofs show that the plaintiff was aware of the washout; that there was a well-beaten track around it; and that he did drive around it in safety,

and the point where the team left the traveled part of the way was 30 feet south of the washout. There is no claim in the declaration that it caused the shying of the colt.

We are of the opinion that the trial court was in error in refusing to direct a verdict for defendant, as either ground would have furnished a basis for so doing.

The judgment will be reversed, and no new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, MOORE, and STEERE, JJ., concurred with BIRD, J.

OSTRANDER, J. I concur in reversal upon the first point.