## SUPREME COURT.

EDWARD KEELEY, Administrator, &c., of JOHN KEELEY, deceased, agt. THE ERIE RAILWAY COMPANY.

*Action under the statute — negligent killing — nonsuit.*

In an action brought under the statute for the negligent killing of plaintiff's intestate while a passenger on defendant's road, the evidence showed conclusively that there was no negligence or want of proper care, on the part of the defendant, in the management of their road or in running their cars at the time of the accident, but the evidence was clear and convincing to establish the fact that the *misplacement of the switch* which caused the accident by which the death ensued, was done by some evil-disposed person, not connected with the road, shortly preceding the arrival of the train in the night-time :

*Held,* that the plaintiff's *nonsuit* at the circuit, upon such evidence, was clearly correct.

*Albany General Term, March,* 1873.

MILLER, *P. J.,* DANIELS *and* DANFORTH, *JJ.*

EXCEPTIONS ordered to be first heard at general term.

The action was brought under the statute for the negligent killing the plaintiff's intestate. The deceased was a passenger on a freight train upon the defendant's railroad going west, and was killed at Tioga Centre in a general smash up of the train caused by the displacement of the switch rails, which occurred July 30, 1870. The answer alleges, as a defense, "that the injury mentioned in the complaint as having occurred to the plaintiff's intestate was occasioned by the *willful and wrongful act of some third person,* and not by any negligence on the part of the defendant."

Keeley agt. Erie Railway Company.

The case was tried at the Tioga circuit, in March, 1872, before Mr. justice MURRAY and a jury.

At the close of the plaintiff's testimony a motion was made for a nonsuit, which was denied.  At the close of the whole evidence the defendant's counsel renewed the motion for a nonsuit, and asked the court to direct a verdict for defendant upon each of the grounds specified at the close of the plaintiff's case.

The court granted the nonsuit on the ground that the evidence shows the rail was displaced by some unknown person by design, and there is no evidence of negligence of the defendant in not guarding against and discovering the same.

The plaintiff's counsel asked the court to be allowed to go to the jury upon the following propositions: In the first place, that there is no evidence in the case that the displacement of the switch, or that this accident, was caused by the willful conduct of any third party; second, that the evidence shows that the accident was caused by the negligence, want of care and prudence of the railroad company; third, that if the accident was caused by some evil-disposed person, that it is proved the company did not exercise that degree of care, foresight and caution which the law requires them to exercise in order to discover the act of the villain, and thus prevent the accident; fourth, to go to the jury upon the question as to whether the switch and its apparatus were of the most approved character with reference to the security and safety of the passengers on the trains on this railroad; fifth, upon the question as to whether the pin at the fulcrum of the switch was of a proper size and properly secured, as well against design as against accident; sixth, upon the question as to the credibility of the witnesses as to the explanations for this accident which are offered by the defendant; seventh, upon the question generally as to whether this accident was the result of accident or design.   Also, to submit to the jury the question as to the want of care and vigilance of the company in not providing a switchman or some person to take care of and guard

this switch. Also, to submit the proposition to the jury that there is affirmative proof in the case that this accident was not the result of design, from the circumstance that this pin, spoken of in the evidence, was found upon the head-block, and the washer hung upon the handle of the switch. Also, that no villain, accomplishing his work, would thus advertise his villainy; that the inference to be drawn from it is that it was the work of some one, connected with the railroad, finding those articles lying on the ground after accidental displacement, placed them in those positions for the purpose of preservation. Also that, by the action of the cars, ordinarily, as it is proven in this case, in time the pin might have become displaced and fallen out, and the washer off, and the rails thus become accidentally misplaced. Also, that there is evidence, generally, to submit to the jury on the question of the defendant's liability.

The court refused each of the requests of the plaintiff, and the plaintiff's counsel duly took exception to the ruling upon each separately, and also duly excepted to the ruling granting the nonsuit.

At the close of the trial the counsel for the plaintiff asked the court for an order staying further proceedings upon the nonsuit entered, and for time to make and settle a case and exceptions for the purpose of an appeal from the judgment which might be entered on the order for the nonsuit. The court thereupon made, and directed the clerk to enter, the order providing for a motion for a new trial, in the first instance, at the general term, as appears in the minutes of the trial hereinbefore given; and this case is made pursuant to such order and direction.

The material facts are stated in the opinion.

*F. W. Hubbard*, for plaintiff.

*O. W. Chapman*, for defendant.

MILLER, *P. J.*—The plaintiff made out a case presumptively after he had proved that the intestate was a passenger, and that the accident was caused by the displacement of the switch.   The burden of showing a want of responsibility then rested with the defendant; and the allegation of criminality, on the part of some one not connected with the defendant, by intentionally deranging the switch and thus causing the disaster, should have been satisfactorily established to justify a nonsuit, and to authorize the court to take the case from the jury.

The plaintiff's counsel insists that the criminality of a person not connected with the road cannot be established by presumption merely, but must be proved with certainty, so as to dispel every other hypothesis.   This is, no doubt, the rule (*Edgerton* agt. *N. Y. and H. R. R. Co.*, 39 *N. Y.*, 229); but this salutary principle does not, I think, go to the extent of demanding proof by an eye witness of a criminal transaction which is usually perpetrated in secret, and which no human being but the actor can positively know.   Such a fact, like many others, may be established by circumstances, which are often as strong and convincing as direct testimony, and which lead to the same inevitable conclusion.

The evidence shows that the switch was last used before the accident about five o'clock in the afternoon, when it was left all right with the rails in their places.   The switch-handle was locked and the hasp or clasp which is used to secure the neck-rod from getting out of place was down, and the wooden pin to keep the hasp or clasp down driven in with a stone, so that it could only be removed with difficulty.   The neck-rod was connected with the crank of the upright rod with a pin underneath and a washer, which pin held both the washer and neck-rod in their places.   This pin was split at the end, opened with an adz after it was put in, which made it fit so tight that it could not fall out of itself and could not be taken out except by the use of force.   At 6 o'clock in the evening a hand-car went over the track and the switch was all

right. About 8 o'clock the night track-walker upon this beat examined the switch carefully in accordance with his usual custom and instructions; at 8.34 a train passed with safety, being the last one which passed; at 9.47, everything, so far as known, was safe and in good condition, and any change, therefore, in the switch, by which the train was thrown off the track, must have occurred between the two last-named periods.

The proof also shows that, after the accident, the iron pin and washer, on the end of the crank, instead of being found under the switch-gate, where only they would have fallen if they had accidently worked out, were found, the one on the head-block and the other slipped over the switch-handle, and the hasp turned up over back, and the wooden pin, which had been driven in with force, was gone.

Upon this state of facts it is difficult to see how it can well be argued that the switch could have been displaced by the accidental loosening of either of the pins or the movement of the cars. If so, why was the iron pin and washer in the place where it was found; and what had become of the wooden pin which was gone? It would appear to be almost impossible to remove either of these pins by any ordinary means, such as hitting them with the foot, as is suggested, or otherwise than by force; and if credible witnesses, unimpeached, are to be believed, then the conclusion is irresistible that some evil-minded person, with some object in view, had been tampering with the switch and caused the calamity.

Such being the case, the question arises whether the evidence establishes that the displacement was caused by the willful act of some third person, so as to authorize the court to take the case from the jury and to justify the nonsuit. The defendant had introduced as witnesses most of the persons who had in any way been connected with the railroad in the vicinity of the switch, or who had anything to do with it, and thus established by these witnesses entire innocence of any participation in the criminal act. True, all of the

employes were not called, and it is insisted that one day-walker on the track was not sworn; that no reason is assigned why he was not, and that it does not appear that others employed on the road were called. The proof seems to include all, or nearly all, the workmen who could have had any duty to perform, and the omission to call a single one, or the omission to prove that none others were employed, except those called, unless accompanied by circumstances of suspicion alone, taken together, does not establish that the act may have been done by one of the employes. Such evidence at most would be only negative evidence, unless the witness or witnesses called examined the switch after the 8.34 train passed, which is not claimed. The interest of employes would naturally be to protect the company from accident, and the presumption would be strongly against their criminality. Evidence, therefore, that they did not willfully change the switch and cause the accident was not required, and from the circumstances surrounding the transaction the judge at the trial was justified in holding that the rails were displaced by some unknown person.

Upon the question of the defendant's negligence, the evidence showed quite conclusively that every means had been employed which prudence, skill and care required to guard against danger, and I think it does not appear that there was any omission, either in the means or character and capacity of the men employed in taking care of the switch or managing the train. The switch and pin and the crank and all the fixtures were of the most approved kind, the very best in use; and the testimony shows that, before the accident, spikes were used to make the switch more secure. There was nothing for the jury upon the question whether any better switch-key, headed or burred, might not have been used, as the testimony showed that the latter were not as good as those which were used, and more liable to get loose. Nor was there any question as to lights at the switch during the

night, as the proof showed they were not of any advantage and were not generally in use.

The judge was clearly right in refusing to submit the various requests made by the plaintiff's counsel to the jury, and in granting the motion for a nonsuit.

The question put to the witness, Shea, as to his instructions to the track-walker "to examine both switches and take the locks and pull them to see if they locked," etc., was competent for the purpose of showing the exercise of proper care and vigilance.

So also the questions put to this and another witness as to the men being prudent, careful, etc., was properly received upon the same ground. As, however, the plaintiff failed, upon the whole evidence, to sustain his action, it is of no consequence whether the testimony was competent.

There being no error, a new trial must be denied and judgment ordered for the defendant, with costs.

DANIELS and DANFORTH, JJ., concurred.