WHITE v. TOWNSHIP OF RILEY.

NEGLIGENCE—DEFECTIVE BRIDGE—ABSENCE OF BARRIERS—PROXIMATE CAUSE.

> The fact that the immediate cause of a horse's backing over the unguarded approach to a bridge was that he took fright at a crack in the flooring of the bridge, which, by reason of the action of wind and snow, had apparently largely increased in width, does not render the absence of barriers on the approach so remote a cause of the accident as to prevent a recovery therefor against the township having control of the bridge, based upon its negligence in this respect, if the situation was such as to be calculated to frighten horses of ordinary gentleness. LONG, C. J., and GRANT, J., dissenting.

Error to St. Clair; Vance, J. Submitted April 7, 1897. Decided May 28, 1897.

Case by Elizabeth White against the township of Riley for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Frank Whipple* (*J. B. McIlwain*, of counsel), for appellant.

*Avery Bros. & Walsh*, for appellee.

LONG, C. J. This action is for personal injuries, claimed to have arisen by the neglect of the defendant township. On the evening of January 23, 1894, plaintiff, with her husband, was riding in a two-wheeled cart, drawn by one horse, and attempted to cross what is called "Belle River Bridge." This bridge was 62 feet long, 16 feet wide, and about 10 feet above the water. The approach at the west end, where the accident occurred, is 16 feet wide, with wings or retaining walls extending

westerly 12 feet and 6 inches, and widening westward to about 20 feet. The wing on the north side is from 6 to 7 feet above the water of the river, which comes close to the wall. The traveled part of the road at the west end of the bridge was 11 feet wide, and somewhat higher than the wall, with a slope to the wall. These retaining walls have no railings, or barriers. The bridge had a substantial railing reaching to each approach. Across the whole bridge there were cracks between the planks, through which the river could be seen; and about 17 feet east of the west end of the bridge there was one crack 1½ to 2 inches wide in the center, and other smaller cracks near by. The bridge had been in this condition some 15 years. On the evening in question, when the plaintiff and her husband reached the bridge, it was snowing and blowing. Some two or more inches of snow had fallen, and the action of the wind had the effect of blowing the fallen snow back each way from the cracks at the west end of the bridge, causing them to appear much wider than they really were,—some of the witnesses say, as wide as the hand,—and leaving a dark-colored plank bare for an inch or more on each side. When the plaintiff had driven onto the west end of the bridge about the length of the horse and cart, the horse became frightened, backed off the bridge, swung around, and backed off the approach; the horse, cart, plaintiff, and her husband all going over. This action is brought to recover for the injuries so received. On the trial the court below directed verdict in favor of defendant.

The plaintiff claims:

1. That the defendant was negligent in allowing cracks in the floor of the bridge.

2. That the defendant was negligent in not constructing barriers on the retaining walls forming a part of the approach.

It is claimed that the horse became frightened at the crack in the bridge, and, by reason of no barriers being erected on the approach, the horse backed off, and caused the injury.

It appears from the testimony of the plaintiff's husband, who was the only eyewitness to the accident aside from the plaintiff, that the horse was gentle, and the family were accustomed to driving her over the bridge; that the snow on that night had blown up through the crack, and parted, so that it had the appearance of nearly a plank gone; that he had no trouble whatever in driving the horse onto the bridge; that, when he had driven on some 12 or 14 feet, the horse snorted, and began to back up. The witness then stated:

"It had snowed about an inch and a half. It was snowing quite snug. The storm was blowing in her face. It was a regular flurry of a snowstorm, but not what you would call a blizzard. I examined the plank after the accident, and saw the crack, and the black space along the crack where the snow had blown back. Looked about six inches wide,—looked like a hole. The wind blowing up from the river parted the snow each way from the crack. * * * I know it was the wind blowing up through the crack that frightened her, because she snorted. * * *

"Q. Then I take it, from what you say, that on account of the storm, the blowing of the snow through the crack, and it looking so much larger than what it was, that the horse got frightened at it?

"A. Yes, sir.

"Q. Then, if there had been no storm at all, you could have driven over there just as well that night as any other time that you went over it, could you?

"A. Likely.

"Q. You never had any trouble?

"A. No; of course.

"Q. But if it hadn't been snowing at all, and blowing that way, you think you could have gone along just as safe as you ever did?

"A. Likely. * * *

"Q. You say the snow blowing and the bluster, and leaving a dark streak each side of the crack, scared your horse?

"A. Yes, sir."

Other witnesses were called, who testified that the snow had blown away from the crack on each side, leaving a

dark streak on each edge of the plank. This testimony is wholly uncontradicted.

It is argued by counsel for defendant from this testimony that the changed appearance of the bridge, caused by the wind and snow, was the proximate cause of the injury; and that the township cannot be held liable for the action of the wind and snow. The court below stated, in directing the verdict for defendant:

"The fright of the horse was, therefore, without the fault of the township, and her backing off the bridge was also without its fault. The horse, having passed safely over the approach and onto the bridge, could not get off the bridge without some intervening cause. This intervening cause was the fright and backing of the horse, for which the township was not responsible. Without this intervening cause the accident could not have happened. It follows that the want of a railing was not the proximate cause of the plaintiff's injury, and she cannot recover."

Here was a perfectly gentle and steady horse. Plaintiff's nusband says he had never seen her frightened before, and that his wife and children had driven her. He had broken her on an engine, and she would eat oats when the whistle was blown. His wife and children had driven her over this very bridge only the Saturday night before, and she had many times before been driven over it. There had been no change in the bridge. It had been built some 15 years, and had been used in perfect safety for that time by the public, who passed over it daily. It was one of the most frequently-traveled thoroughfares leading to the village of Memphis, in that county.

The first question in the case is whether the neglect to place a barrier along the approach was the proximate cause of the accident. Others, for many years, had passed there safely. The roadbed was wide enough for safe passage, and the testimony shows that this spot had been safely passed by the plaintiff on that night. The township is liable only where the neglect complained of

was the proximate cause of the injury.   If such neglect was the secondary or remote cause, the township is not liable.   *Beall* v. *Township of Athens*, 81 Mich. 540.

It must, we think, be conceded, under the circumstances here stated, that the want of a barrier was not the proximate cause.   But plaintiff contends that it was one of the causes, and that, where two causes unite in producing an injury, one being the negligent act or omission of the municipality and the other something for which neither the municipality nor the party injured is responsible, and where the injury caused could not have resulted but for the negligent act or omission of the municipality, such act or omission is the proximate cause of the injury. This contention, we think, is well supported by authority. *Selleck* v. *Railway Co.*, 93 Mich. 380, and cases there cited.   It is further contended by counsel for plaintiff that the crack in the planking on the bridge was the cause of the fright of the horse, and, but for that and the want of barriers, the accident would not have happened.   It is contended, further, that the testimony of many witnesses in the case shows that other horses had been frightened at that crack in the bridge many times.

But it appears conclusively that the plaintiff's horse never became frightened at the crack in its ordinary condition, and the testimony establishes the fact that, but for the changed condition of the crack on that night, the plaintiff's horse would have gone forward.   The testimony of plaintiff's husband fully explains the cause of the fright.   It was, he says, that the crack looked larger, and that was what the horse got frightened at; and that, if there had been no storm, he could likely have driven over at that time the same as at any other, and just as safely as he ever did.   It was, as explained by him, the snow blowing and the bluster, and the leaving of a dark streak each side, that scared the horse.   Most certainly the township authorities were not in fault for this.   It was not one of the consequences which the township authorities should have foreseen and guarded against.   It

was the changed condition of the bridge, caused by the wind and snow, that was the proximate cause. The case is not like *Ross* v. *Township of Ionia,* 104 Mich. 320, where the water ran through the waste-weir, which frightened the horse. The roadway was constructed on the top of the dam, and no barriers were erected to the approaches. The horse backed off; and it was held that courts and juries should take into consideration the conditions which surround the highway at the particular point in determining whether a barrier should be erected. In the present case no such conditions existed that it can be said that barriers should have been erected. For 15 years it had been used with perfect safety. This horse had gone over it many times in safety, and it was only when other causes intervened, for which the township was not responsible, that the place became dangerous on that night. We think the court very properly directed a verdict for the defendant.

The judgment should be affirmed.

GRANT, J., concurred with LONG, C. J.

MONTGOMERY, J. I cannot accept the view that the defects in the highway and bridge shown by the evidence are not the proximate cause of the casualty resulting to plaintiff. I understand that the contention of defendant's counsel upon this point necessarily involves a concession that, for an injury resulting to the plaintiff by reason of a want of barriers, the plaintiff might be held entitled to recover, and, further, that the cracks in the bridge, in the condition in which they were, were calculated to frighten horses of ordinary gentleness. The evidence in the case tends to show not only that this is true, but that in many instances horses were actually frightened in attempting to cross this bridge. The contention gets down to this: That the cause of the horse's shying and backing up was the appearance of this bridge, which appearance was occasioned by the wide cracks in the floor of the bridge, and by the action of the wind in blowing the snow away from

the cracks, giving an appearance of a wider opening than in fact existed. It would hardly be suggested that a highway is intended to be traversed only in fair weather. The authorities are so uniform that a highway is for every-day use, and that a traveler has the right to make use of the highway in the night-time, that such a contention would be without support if made. This court has frequently held that it is not incumbent upon municipal authorities to remove snow and ice, and this holding is based upon the ground that, as snow and ice are so common in this latitude, the intention of imposing the onerous duty upon a municipality of removing such accumulations will not be presumed in the absence of a clear expression of such legislative intention. It seems to me to be wholly illogical to hold the municipality exempt from this duty upon such grounds, and at the same time to hold that the natural action of snow, and the appearance which its fall would necessarily give to such a structure as the bridge in question, is so *extraordinary* as to amount to an intervening cause. The authorities were bound to know that snow falls in this climate, and that it will not rest upon air; that, if light, it will, to a greater or less extent, be blown back from a crack or opening such as that described in this bridge. This is no intervening cause. It is a condition necessarily arising out of other conditions sure to exist, namely, the cracks in the bridge and the storms which at certain seasons visit this latitude. Nor was the condition of this bridge such as might not have been foreseen by the authorities, if cognizance were taken of the action of the elements. If we adopt the rule that the authorities should be held responsible for such consequences as common experience would show to be usual, I think it is clear that the result cannot be held to be too remote to permit a recovery in this case.

The only distinction which can be made between this case and *Ross* v. *Township of Ionia*, 104 Mich. 320, is that in the *Ross Case* the conditions which caused the fright, and caused the horse to back off the approach to

the bridge, existed the year round.   In the present case, while this was not so, they were conditions certain to exist by the action of the elements, so common that this court, in taking judicial notice of the frequency of the fall of snow, has held the doctrine above alluded to.   The fact that the injury occurred by the horse's backing away from the bridge because of its fright does not render a want of barriers too remote a cause to permit recovery. See *Langworthy* v. *Township of Green*, 95 Mich. 93; *Ross* v. *Township of Ionia, supra; Shaw* v. *Township of Saline, post; Gage* v. *Railroad Co.*, 105 Mich. 335.

I think the case should have been submitted to the jury under proper instructions.

Judgment reversed and new trial ordered.

HOOKER and MOORE, JJ., concurred with MONTGOMERY, J.