## SMITH v. TOWNSHIP OF WALKER.

1. DEFECTIVE HIGHWAYS—NEGLIGENCE—PLEADINGS AND PROOFS.
   A claim that a township was negligent in not giving notice to travelers of a defect in a highway is not within a declaration which counts merely upon a failure to repair after having knowledge of the defect.

2. SAME—WASHOUT—DROWNING OF HORSE—PROXIMATE CAUSE.
   A hole in a highway three or three and one-half feet deep, caused by a washout, is not the proximate cause of the drowning of a horse which slips back and falls into the hole in attempting to break through ice which has formed upon the water flooding the highway, but for which it could proceed in safety.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   One who urges his horse over a highway covered with water up to the horse's knees, and increasing in depth as he proceeds, and upon which ice two or three inches thick has formed, is guilty of such contributory negligence as will

preclude a recovery for the drowning of the horse in a wash-
out,—especially if he makes no particular effort to save the
horse after it falls into the washout.

Error to Kent; Grove, J.    Submitted April 8, 1898.
Decided May 6, 1898.

Case by Inman Smith against the township of Walker
to recover the value of a horse drowned on defendant's
highway.    From a judgment for plaintiff, defendant brings
error.    Reversed.

*Wolcott & Ward,* for appellant.

*Watkins & Ransford,* for appellee.

LONG, J.    This action was brought to recover the value
of a horse which was drowned on the public highway in
defendant township.    It was claimed that this highway
was out of repair, and that defendant, after notice or
knowledge of such defect, failed to repair the same.

The highway extends northward from the city of Grand
Rapids parallel with Grand river, and, on account of its
proximity to the river, and the low and flat nature of the
ground, is overflowed in various places in times of high
water.    The accident occurred on the afternoon of Janu-
ary 14, 1897.    For several days prior to this the weather
had been warm, and there had been continuous rains, and
on the morning in question it commenced to freeze.    Mr.
Thomas Hart was in plaintiff's employ, and was driving
plaintiff's team on the way from Grand Rapids to plain-
tiff's home.    Upon reaching this flat piece of ground, he
found it considerably overflowed, and ice from two to
three inches thick formed upon it.    He drove into the
water, and as his horses advanced they would break
through the ice.    After advancing for several wagon
lengths, the water was up to the knees of the horses.    It
apparently grew deeper as they advanced, and suddenly
the horses stepped into a washout.    They reared upon the
ice with their forefeet, and the ice giving way let them

into the hole. In the struggle one of the horses reared upon the ice, slipped, and fell, pulling the other over, and one was drowned. Just before reaching this hole, the horses hesitated about going on, but the driver whipped them, and compelled them to go forward.

Mr. Mitchell, a witness for plaintiff, passed over the road the second day before the accident. The water was running over it in two small streams, but he found no holes. The water was then rising. He testified that he again drove over the road about noon of the day of the accident, and found the water still deeper. At this time he found there was a hole about $2\frac{1}{2}$ feet deep and 5 to 7 feet across. The water was running over the road. Mr. Bush, another of plaintiff's witnesses, drove over the road four times on the afternoon of the day before the accident. There was about two feet of water over the road the last time he went, and he found a mud hole at that time about three feet deep. He was driving one horse, and had a half cord of wood on his wagon, and went over safely. Mr. Lamoreaux had driven over the road on the morning of the day, and found a hole there, but not a dangerous one. It will be seen from this testimony, and it was not disputed, that the road was in good condition at the time the rainfall commenced. The water began running over the road two days before the accident, and without dispute made this washout. The water kept rising over the road from the time it commenced until the accident occurred. The notice or knowledge which the township had of this condition is shown by the testimony of the witness Mitchell for plaintiff and of Mr. Lamoreaux for defendant. Mr. Lamoreaux was the overseer of highways of that road district. Mr. Mitchell testified that he saw Mr. Lamoreaux drive over the road on the morning of the day before the accident; that he saw him again shortly before noon of the same day, and asked him about the road, he having heard there was a bad hole in it, and that Mr. Lamoreaux replied that it was not a bad hole, and made some such remark as, "It cuts no ice with our folks." Mr. Mitchell

did not claim that he told Lamoreaux there was a bad hole there, and Mitchell passed over it safely after this talk. Lamoreaux testified that this conversation was some days later, and also that when he passed over the road he found a mud hole, but that it was not dangerous.

The defendant asked the court to direct the verdict in its favor, which request was refused. The court submitted the case to the jury on the questions both of actual and constructive notice. The jury were advised by the court substantially that if the plaintiff's agent, in the exercise of due care, attempted to pass over the road, and they found that the road was in a defective condition, not fit and safe for public travel, and that the township had actual or constructive notice of its condition, and sufficient time, after such notice, to make the repairs, then the plaintiff was entitled to recover. The jury returned a verdict in favor of plaintiff for the value of the horse.

We think this verdict should not stand. The evidence shows conclusively that the township had no opportunity to make the repairs, even had the overseer of highways found the hole there, as claimed, on the day before. The water was rising, and continued to rise up to the time of the accident.

But counsel for plaintiff contend that the overseer should have given some notice that the way was dangerous. It is sufficient answer to this to say that the declaration does not count on any such negligence.

Aside from this question, we think there was no notice to the township, either actual or constructive, of the dangerous condition of the highway on that day. Mr. Mitchell and Mr. Bush each drove over it after Mr. Lamoreaux did, and Mr. Bush four times with wood. Each time he drove over he found the hole deeper, but of this fact Mr. Lamoreaux was not advised. Lamoreaux had found it safe, and Mitchell had found it safe.

It is apparent that the unsafe condition at the time of the accident was not the depth of the hole. It was then only 3 to $3\frac{1}{2}$ feet deep. Ice had formed, and the horses, in

attempting to spring upon it, slipped and fell. The ice was from 2 to 3 inches thick. The township was in no wise at fault for the rising of the water or the formation of the ice. The hole or washout was not the proximate cause of the injury. But for the water and the ice formed thereon, the horses undoubtedly would have gone through safely, as the others had. The water at the washout was scarcely breast-high to the horses. They could only go through the ice by breaking it, and one of them, attempting to break it, slipped and fell, and could not be made to stand up. A township is liable only, under the statute, for injuries sustained by reason of its neglect to keep its highways in repair, where such neglect is the proximate cause of the injury. The case is governed by *Beall* v. *Township of Athens*, 81 Mich. 536; *Bleil* v. *Railway Co.*, 98 Mich. 228.

Aside from every other consideration in the case, we are satisfied that the plaintiff should not be permitted to recover, as it is shown conclusively that the driver was guilty of negligence. He saw the condition. The horses were urged forward after the water was up to their knees, though they were compelled to go upon the ice, and at every step broke through it. When they stopped, they were whipped forward, the water getting deeper as they advanced. When they reached the washout, they again reared. The ice held for a moment, and one of them slipped and fell. All that was done by the driver was to unhitch the traces, and very little appears to have been done by two other occupants of the wagon, who were with the driver at the time of the accident, to save the horses. It was certainly negligent to attempt to drive them forward under the circumstances here stated.

The court should have directed the verdict in favor of defendant. The judgment must be reversed, and a new trial granted.

The other Justices concurred.