LESLIE v. JACKSON & SUBURBAN TRACTION CO.

1. Street Railways — Negligence — Open Switch — Question for Jury.

Evidence that an electric car, going at the rate of 15 or 20 miles an hour, ran into an open switch making a curve in the track, whereby a passenger was injured; that the switch was in a public place, where children and boys congregated; that it was not fastened; that an iron bar used for opening the switch was habitually left on the ground near the switch by the employés, and that any one could open the switch with the bar,—justifies the submission of the question of defendant's negligence to the jury.

2. Personal Injuries—Damages—Evidence—Declaration.

Evidence relative to the neuritis of the sciatic nerve is admissible, under a declaration for damages for personal injuries averring that plaintiff was bruised and wounded, that he suffered a concussion of the spine, and injuries to the tissues and nerves of the hip, with consequent wasting and shrinking of the leg.

3. Same—Pre-existing Injury—Instructions.

Where, in an action for personal injuries, a pre-existing injury was shown, which had not prevented plaintiff from working, nor affected the parts of the body for injuries to which the suit was brought, an instruction that plaintiff could not recover for defects which existed before the accident, nor effects due to the former condition, or its growth or development, but that he was entitled to only such damages from decreased earning power as, in accordance with his former condition, the jury should consider just, properly stated the rule of damages.

4. Trial—Remarks of Counsel.

Characterizing defendant's witnesses as cattle by counsel in his argument is not reversible error, where counsel is rebuked by the court, retracts his statement, and such remarks are not shown to have influenced the jury. Grant, J., dissenting.

Error to Jackson; Smith (Clement), J., presiding. Submitted June 30, 1903. (Docket No. 133.) Decided October 6, 1903.

Case by Stephen W. Leslie against the Jackson & Suburban Traction Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*T. E. Barkworth* and *Worrall Wilson,* for appellant.

*John F. Henigan* (*Charles A. Blair,* of counsel), for appellee.

Moore, J. On June 18, 1901, plaintiff was a passenger on one of defendant's cars. The car ran through an open switch at the intersection of Page avenue and Railroad street. The plaintiff received severe injuries. He brought this suit, and recovered a judgment. The defendant brings the case here by writ of error. The negligence charged may be briefly stated:

"*First.* Want of reasonable care in not having the switch properly set and adjusted, and in not keeping the implements used by its servants and employés in setting and adjusting the switches so that children and others might not get them and improperly use them, and that some child or other person took the implement and moved the switch.

"*Second.* The failure to have the switch properly set and adjusted, and the running at a high rate of speed when the switch was adjusted for Railroad street instead of Page avenue.

"*Third.* The failure to approach the switch with caution and with the car under control."

It is claimed there was no testimony that would warrant the submission of the case to the jury under any of these claims. Railroad street runs east and west. Page avenue runs in a northerly direction. Leading from Page avenue to Railroad street was a switch connecting the track on Page avenue with the track on Railroad street, which was constructed only a few rods on Railroad street. It is claimed by plaintiff that this switch is at a public place, where a good many children, and especially boys, congregate; that it was not fastened; that it was opened and closed by the use of a small iron bar, which was

habitually left by the employés of the road on the ground near the switch, where anybody who desired to do so could take it and open the switch; that, upon the date in question, the car approached this switch at a rate of 15 or 20 miles an hour; that some one had thrown the switch open, making a curve in the track, which fact the motorman did not observe, and, as a result thereof, plaintiff received severe injuries. This case was tried before the opinion was handed down in the case of *Noe* v. *Railway Co.*, 133 Mich. 152 (94 N. W. 743). The facts disclosed in this case show a much greater degree of negligence than was disclosed in the case of *Noe* v. *Railway Co.*, *supra*, and we think there was a case for the jury.

It is claimed the court erred in admitting testimony relative to the neuritis of the sciatic nerve, because it was not averred in the declaration. The averment is:

"And thereby the plaintiff was then and there violently thrown to and upon the ground there, and was thereby greatly bruised, hurt, and wounded, and sustained a severe concussion of the spine, and the tissues and nerves in the gluteal region of the right hip were severely bruised and injured, causing a great wasting and shrinking of the right leg, and the nerves, muscles, and tissues thereof; and he has become permanently disabled from performing manual labor * * * from thence hitherto, and has suffered great pain and anguish of mind and body, and will continue to so suffer in the future, and became and was sick, sore, lame, and disordered, and so remained for a long space of time, to wit, from thence hitherto," etc.

We think the declaration was broad enough to admit this testimony, under *Johnson* v. *McKee*, 27 Mich. 471, and *Montgomery* v. *Railway Co.*, 103 Mich. 46 (61 N. W. 543, 29 L. R. A. 287); *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496 (65 N. W. 616); *McKormick* v. *City of West Bay City*, 110 Mich. 265 (68 N. W. 148); *Snyder* v. *City of Albion*, 113 Mich. 275 (71 N. W. 475); *Beath* v. *Railway Co.*, 119 Mich. 512 (78 N. W. 537); *Fye* v. *Chapin*, 121 Mich. 675 (80 N. W. 797).

It is claimed the court erred in declining to give the following request:

"The plaintiff is not entitled to recover for defects which existed before the accident, and your verdict must not ignore these conditions. Whatever effects in his present situation are due to such former condition, or its growth or development, plaintiff cannot hold defendant liable for; and, in awarding damages, if you should find that the negligence of the defendant is established, nothing should be allowed on account of any conditions which grow out of or connected with the former defects."

The judge charged the jury upon that subject as follows:

"In considering the question of damages, I instruct you that plaintiff is not entitled to recover for defects which existed before the accident, and your verdict must not ignore these conditions, if you find such conditions existing. Whatever effects in his present situation are due to such former condition, if any, or its growth or development, plaintiff cannot hold defendant liable for; and, in awarding damages, if you should find that the negligence of the defendant is established, nothing should be allowed on account of any conditions which grew out of, or are connected with, the former defects, if any. The plaintiff is only entitled to such damages on account of decreased earning power as, in accordance with his former physical condition, you consider just; and you are at liberty to disregard the depreciation thereof, if you find it existed prior to the accident, arising out of the previous physical defects of the plaintiff."

The pre-existing injury, and its nature and extent, are substantially stated in the following excerpt from the testimony of said plaintiff:

"The injury occurred when I was 14 years old, in Wood county, Ohio. It was caused by falling on the ice. I have not been prevented from working, as a result of that injury, since I have been here. * * * The injury affected my hip joint or leg. It was not my right leg. It was my left one. It did not affect my back. Of course, it was jarred in that joint. I didn't say that it threw me over when I got tired. I said I stood stooped to rest myself. Just changed my position, the same as you would if you were tired. It was not because of the weakness in my back."

We do not think, under the proofs, there was any failure to properly state the law.

One other question calls for attention. During Mr. Henigan's argument, he characterized some of the defendant's witnesses as cattle, to which Mr. Barkworth asked an exception.

"*The Court:* I hardly think I would make those remarks. I would hardly class them as cattle.

"*Mr. Henigan:* I will retract that.

"*Mr. Barkworth:* I don't think the judge's remark cures the error. I don't want to waive my exception.

"*Mr. Blair:* I don't think Mr. Henigan intended to say the men were cattle."

We are all agreed the remarks of counsel were highly improper, and deserved a much severer rebuke than was given by the trial judge. Witnesses attend court in response to subpœnas, and are entitled to consideration, instead of vituperation. If there is anything in the testimony of the witness which calls for criticism, it is always proper to make it, but it does not justify calling him opprobrious names. If counsel had any purpose in designating the witnesses as cattle, it must have been to prejudice the jury against them. If we were satisfied that purpose had been accomplished in this case, we should not hesitate to reverse it for that reason. We are of the opinion, however, that, with the average juror, language of this character is not likely to have the effect expected by the one who utters it. When taken in connection with what was said by the judge and by the counsel associated with the attorney who uttered it, we are not satisfied the occurrence worked harm to the defendant.

The other questions raised by counsel have been examined, but we do not deem it necessary to discuss them.

Judgment is affirmed.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred with MOORE, J.

GRANT, J. (*dissenting*). I think the record shows

that the plaintiff made a case proper to be submitted to the jury, under the majority opinion in *Noe* v. *Railway Co.*, 133 Mich. 152 (94 N. W. 743). But I think the judgment should be reversed for another reason. The attorney for the plaintiff, in his argument to the jury, called the defendant's witnesses "cattle." The attorney for the defendant properly took an exception, when the court said:

" I hardly think I would make those remarks.  I would hardly class them as cattle.

" *Mr. Henigan:* I will retract that.

" *Mr. Barkworth:* I don't think the judge's remark cures the error. I don't want to waive my exception."

Counsel do not make such remarks to juries unless they think that they and their clients will profit thereby.  It is true that such unjustifiable and uncalled-for remarks ought to be prejudicial to the cause of the one in whose interests they are made. But courts have universally recognized the fact that counsel make them for a purpose, viz., to prejudice the jury.  Courts cannot say that that purpose has not been accomplished, and have, as a rule, reversed judgments for the use of such language, unless the court has promptly rebuked the attorney, and so instructed the jury as naturally to counteract the poison of the language. The language in this case deserved a prompt and severe rebuke. So far from the language of the court being a rebuke, I think it rather added to the sting. Such mild language would rather convey the idea that there was some doubt in the mind of the judge as to the impropriety of the language.

Nor do I think that the retraction took away the sting. It is one of those cases where the courts hold that the effect of the language is not removed by a retraction.  If it be the rule that a retraction is the antidote, attorneys disposed to indulge in such unprofessional conduct will, for the sake of the effect upon the jury, use the language, and then say they retract it.  The only proper antidote is the prompt and sharp rebuke of the presiding judge, and an instruction to the jury.