ADAMSKI v. MICHIGAN RAILWAY ENGINEERING CO.

1. MASTER AND SERVANT — PERSONAL INJURIES — NEGLIGENCE — PROXIMATE CAUSE—SAFE PLACE TO WORK—QUESTION FOR JURY.
    In an action by a railway construction company employee to recover for personal injuries due to being brushed off a flat car, on which he was riding, by a push car which was on a siding and too near the main track, *held*, that questions were presented for the jury whether defendant had furnished plaintiff with a reasonably safe place to work and whether the proximate cause of the injury was the failure to either remove the car from the siding or securely block or chain the wheels.

2. SAME—EVIDENCE—ADMISSIBILITY—RAILROADS.
    The admission of evidence that leaving the car on the siding was not good railroading was not improper, as, with

197—Mich.—36.

several construction trains and trains carrying employees in operation, it was as important for defendant to exercise reasonable care to protect its employees from injury as though it had been a common carrier.

3. SAME—PERSONAL INJURIES—QUESTION FOR JURY.
   The submission to the jury of the question whether the engineer should have discovered the push car and stopped his train in time to avoid the collision was not improper, where, for several miles north of the point of the collision, from which direction the train was coming, the track was straight and level, and the collision occurred a few minutes before 5 o'clock in the afternoon, and the push car could have been seen for several hundred feet north of the switch.

4. EVIDENCE—ADMISSIBILITY—MORTALITY TABLES—PERMANENT INJURIES.
   In an action for personal injuries, mortality tables are admissible, where, in addition to other testimony as to permanency of the injuries, a physician testified that, judging from X-Ray pictures and an examination, the plaintiff was permanently injured.[1]

Error to Kalamazoo; Weimer, J. Submitted January 4, 1917. (Docket No. 28.) Decided September 27, 1917.

Case by Anton Adamski against the Michigan Railway Engineering Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Alfred J. Mills,* for appellant.

*Charles L. Dibble* (*Harry C. Howard,* of counsel), for appellee.

BIRD, J. Plaintiff was employed as a common laborer by defendant in the construction of its electric railway from Kalamazoo to Grand Rapids. On Sun-

[1]On the general rule as to admissibility in evidence of tables of expectancy of life, see note in 40 L. R. A. 553.
   As to use of X-ray photographs in evidence, see note in 51 L. R. A. (N. S.) 402.

day morning, May 24, 1914, the defendant was informed that a washout had occurred on its line several miles north of Kalamazoo. It hastily summoned from 40 to 60 of its workmen, including plaintiff, and with the aid of a locomotive and two flat cars, went to the washout. The repairs were finished about 4 o'clock in the afternoon, and soon thereafter the men boarded a flat car and started on the return trip. Several of the men, including plaintiff, sat upon the edge of the car with their feet hanging over the side. When about three miles north of Kalamazoo the train passed a siding upon which stood a push car with a small house about 4½ feet high constructed thereon, for the purpose of carrying and storing tools. This car had been left on the siding since the preceding Friday. At the time in question it stood at the north end of the siding, and so close to the main track that the flat car upon which plaintiff was riding "side-swiped" it and brushed plaintiff and several other workmen off the car to the ground. Plaintiff was severely injured. He was taken to a hospital in Kalamazoo, and remained there until March, 1915.

The negligence relied upon was the leaving of the push car on the siding from Friday to the following Sunday, it being the claim of plaintiff that it should have been removed from the side track; that if left on the side track, it should have been securely blocked or chained, so that it could not have been moved back and forth. It was further claimed that the defendant was negligent in the operation of its train, in not discovering the car and stopping before colliding with it. These issues were left to the jury, and a verdict was returned for plaintiff.

1. The meritorious question and the one principally relied upon by defendant is that the case should not have gone to the jury upon the question of defendant's negligence in leaving the car on the siding, inasmuch

as it appeared that four or five boys, living in the vicinity, played with the car on the Sunday afternoon in question, running it back and forth on the track, finally leaving it in the clear at the north end of the siding about two hours before it was struck. Counsel insist that the boys were trespassers, and that the court should have instructed the jury in accordance with the following request:

"You are instructed that there was no negligence upon the part of the defendant, of which plaintiff can complain in this case, in leaving the small car on the switch in the manner in which the undisputed testimony discloses it was left thereon. * * *

"The defendant was not bound to cause the car on its switch to be chained to the track or take any other precaution to prevent third persons from interfering with or moving it than the testimony in this case shows was taken. * * *

"The defendant was not required or bound to keep its track clear for the safety of plaintiff at the time in question in this case against the unlawful acts of a third party in moving the small car from its switch in dangerous proximity to its main track."

In answer to this contention plaintiff's counsel assert that the testimony shows that several boys lived in the vicinity of the siding who went back and forth over the farm crossing near by and had previously played on the siding to the knowledge of the employees. Furthermore, that the testimony is not conclusive that the act of the boys was responsible for the collision, because it also appeared that a strong south wind which was blowing might have moved the car down the slight grade to the point of collision. The further answer is made that, even though the collision occurred by reason of trespassers the antecedent negligence of the defendant in leaving the car upon the siding when not in use was not in keeping with good railroading. Upon this question Mr. Wagner, defendant's superintendent of construction, testi-

fied that in the operation of railroads it is the practice to set push cars, unattended by men, off the track. Mr. Rheims, one of defendant's foremen, after testifying that he had worked for the Michigan Central Railroad about eight years, was asked:

"*Q.* What was the practice of leaving these cars, when unattended by men, on the side track; did you set them off the track?

"*A.* Yes, sir; they were never left on the side track unattended by men on the Michigan Central because of passing trains, etc., and to insure their standing on the spot where we left them, so they would not be moved by strangers. I have also seen the wheels chained if they were not set off."

Under this showing we think it was proper to submit to the jury the question whether defendant had furnished plaintiff with a reasonably safe place in which to work and whether the proximate cause of the injury was the failure to either remove the car from the siding or securely block or chain the wheels. The facts are not unlike those in *Noe* v. *Railway Co.*, 133 Mich. 152 (94 N. W. 743), and must be ruled by it. See, also, *Town* v. *Railroad Co.*, 84 Mich. 214 (47 N. W. 665). In the *Noe Case*, while the plaintiff was returning from his work under similar circumstances, the car ran into an open switch, and he was injured. The defense was made that it had been opened by some malicious person within an hour preceding the accident, but the court held it was a question for the jury to determine whether the defendant was negligent in not locking the switch and providing a light therefor.

But it is strenuously argued that testimony to the effect that leaving the car on the siding was not good railroading was not competent because the road was not being operated as a railroad. The testimony shows that the south end of the railroad where the accident happened had been finished for nearly a year, and was being used daily by several construction

trains and also by trains to carry the employees to and from their work. The operation of trains was frequent enough to call for a set of rules, and the rule book of the Michigan Central was adopted so far as it was applicable. With several trains in operation it was as important for defendant to exercise reasonable care to protect its employees from injury as though it had been a common carrier. 3 Labatt on Master and Servant (2d Ed.), § 966; *Stackman* v. *Railway Co.*, 80 Wis. 428 (50 N. W. 404). We think the testimony was competent.

2. There was no error in submitting to the jury the other ground of negligence, namely, whether the engineer should have discovered the push car and stopped his train in time to avoid the collision. The testimony showed that for several miles north of the point of collision the track was straight and level, that it occurred a few minutes before five o'clock in the afternoon, and that the push car could have been seen several hundred feet north of the switch.

3. Exception is taken to the admission of the mortality tables on the ground that plaintiff's injuries were not shown to be permanent. Beside much testimony from which such an inference might be drawn, Dr. Cook testified that:

"From what I observed when I saw him last summer and from what I observed from the X-Ray pictures and from the examination I made this morning I should say that he is permanently injured."

The admission of the mortality tables over this objection was not error.

The remaining assignments of error will not be discussed, as we are impressed they are not well taken.

The judgment of the trial court must be affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.